**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | |
| | ) | 1:08-cv-00020 (JGK) |
| DANA CORPORATION, et al., | ) | |
| | ) | |
| Debtors, | ) | |
| | ) | |
| THE AD HOC COMMITTEE OF | ) | |
| ASBESTOS PERSONAL INJURY | ) | |
| CLAIMANTS, | ) | |
| | ) | |
| Appellant. | ) | |

**BRIEF OF APPELLANT**
**THE AD HOC COMMITTEE OF ASBESTOS PERSONAL INJURY**
**CLAIMANTS**

Douglas T. Tabachnik (DT 6337)
**LAW OFFICES OF DOUGLAS T.**
**TABACHNIK, P.C.**
Suite C
Woodhull House
63 West Main Street
Freehold, New Jersey 07728
Telephone:  (732) 792-2760
Facsimile:  (732) 792-2761

and

**STUTZMAN, BROMBERG,**
**ESSERMAN & PLIFKA,**
A Professional Corporation
Sander L. Esserman (SE0356)*
Robert T. Brousseau (RB 4873)*
Jo E. Hartwick (JH 4109)*
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999

*Application for admission pro hac vice to be submitted.

# I.
## TABLE OF CONTENTS

**II.   TABLE OF AUTHORITIES** ..............................................**6**

**III.   STATEMENT OF APPELLATE JURISDICTION** ..............**10**

**IV.   STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARDS OF REVIEW** ..............................................**10**

**V.   STATEMENT OF THE CASE AND THE FACTS** ................**12**

**A. STATEMENT OF CASE** ..............................................**12**

**B. STATEMENT OF THE FACTS** ..............................................**13**

1. The Debtors file for bankruptcy and propose a plan of reorganization. ..............................................13

2. The Debtors' Plan classifies and treats asbestos personal injury claims. ..............................................13

3. The Debtors file their Settlement Motion seeking approval of certain sealed asbestos settlement agreements. ..............................................15

4. The Ad Hoc Committee objects to approval of undisclosed settlement agreements. ..............................................16

5. The Bankruptcy Court approves the undisclosed settlement agreements. ..............................................17

**VI.   SUMMARY OF ARGUMENT** ..............................................**18**

**VII.   ARGUMENT** ..............................................**20**

**A. The Bankruptcy Court Erred in approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs without having those Settlement Agreements filed as part of the Public Record of the Jointly Administered Bankruptcy Cases.**.......................**20**

    1. Papers filed in bankruptcy cases are public records and are open to scrutiny.....................20

    2. Settlement Agreements cannot be concealed from creditors, because shielding such agreements from evaluation by creditors defeats the purpose of Rule 9019 of the Federal Rules of Bankruptcy Procedure.........................22

    3. The Settlement Agreements do not fit within the narrow confines of the exceptions to public access to bankruptcy records.....................24

    4. Courts require that settlement agreements with tort claimants be made public because those agreements do not relate to the debtors' commercial operations.....................26

        a. *Courts routinely reject arguments that settlements should be concealed from the public and from creditors.*.................26

        b. *Debtors may not conceal pre-confirmation bankruptcy settlements of tort claims.*.................30

    5. None of the Debtors' authority purporting to support not disclosing the Settlement Agreements actually involved settlement agreements.....................31

**B. The Bankruptcy Court Erred in Applying the Factors to Be Considered when Approving the Settlement Agreements with certain Asbestos-Related Personal Injury Plaintiffs.** ....................................**33**

    1. The Bankruptcy Court ignored the standards and factors to be applied in determining if a settlement agreement should be approved. ...................33

    2. The record demonstrates only conclusory references to a minority of the *Iridium factors*. ...........................34

    3. There is no indication what factors, if any, the Bankruptcy Court applied in approving the Settlement Agreements at issue. ......................36

**C. The Bankruptcy Court Erred in Approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs where those Settlement Agreements Result in Different Treatment of Claims in the Same Class.** .......................**37**

    1. Bankruptcy Claims in the same class must be provided the same treatment ..................................37

    2. The asbestos claimant members of the Ad Hoc Committee are entitled to know whether other class members are receiving preferential treatments. ................................38

**D. The Bankruptcy Court Erred in Approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs that Provide for the Treatment of Future Asbestos Claims without meeting the Requirements Specified in 11 U.S.C. § 524(g).** ..............................**39**

**E. The Bankruptcy Court Erred in Approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs because the Settlement Agreements may be Interpreted to Restrict a Lawyer's Right to Practice and Thus Are in Violation of Ethics Rules** ........................................................................ **43**

**VIII. CONCLUSION** ........................................................................ **44**

II.
## TABLE OF AUTHORITIES

Page

**A. CASES**

*In re Alterra Healthcare Corp.*,
353 B.R. 66 (Bankr. D. Del. 2006)⎯⎯⎯⎯⎯⎯⎯⎯⎯20, 26, 31

*In re Am. Hardwoods, Inc.,*
855 F.2d 621 (9th Cir. 1989)⎯⎯⎯⎯⎯⎯⎯⎯⎯42

*In re AOV Indus., Inc.,*
792 F.2d 1140 (D.C. Cir. 1986)⎯⎯⎯⎯⎯⎯⎯⎯37

*BA Leasing Parties v. UAL Corp.,*
2003 WL 22176068 (N.D. Ill, Sept, 15, 2003)⎯⎯⎯⎯⎯32

*In re Barney's, Inc.*,
201 B.R. 703 (Bankr. S.D.N.Y. 1996)⎯⎯⎯⎯⎯⎯⎯25

*Columbia Golf Transmission CO. v.*
*Louisiana Nat. Gas Pipeline, Inc.,*
Civ. A. No. 93-239, 1994 WL 693361 (E.D. La. Dec. 9, 1994)⎯23

*In re Combustion Engr., Inc .,*
391 F.3d 190 (3d Cir. 2005)⎯⎯⎯⎯⎯⎯⎯⎯⎯40, 41, 42

*In re Dow Corning Corporation,*
244 B.R. 634 (Bankr. E.D. Mich. 1999)⎯⎯⎯⎯⎯⎯30, 37

*In re Drexel Burnham Lambert Group, Inc.,*
134 B.R. 493 (Bankr. S.D.N.Y. 1991)⎯⎯⎯⎯⎯⎯⎯33, 38

*In re Epic Assocs. V*
54 B.R. 445 (Bankr. E.D. Va. 1985)⎯⎯⎯⎯⎯⎯⎯⎯20

*Geltzer v. Andersen Worldwide, S.C.*,
No. 05 Civ. 3339, 2007 WL 273526 (S.D.N.Y. Jan. 30, 2007)⎯⎯27, 29

Page

*In re G-I Holdings, Inc.*,
328 B.R. 691 (D.N.J. 2005) ................................................................40

*In re Global Crossing, Ltd.*,
295 B.R. 720 (Bankr. S.D.N.Y. 2003) ................................................25

*In re Global Vending*,
Bankr. No. 04-23562, Adv. No. 05-2417,
2006 WL 1679732 (Bankr. S.D. Fla. May 16, 2006) ............27, 28, 29

*In re Hemple*,
295 B.R. 200 (Bankr. D. Vt. 2003) .....................................21, 28, 29

*In re Hibbard Brown & Co., Inc.*,
217 B.R. 41 (Bankr. S.D.N.Y. 1998) ........................................38, 39

*In re Ionosphere Clubs, Inc.*,
156 B.R. 414 (S.D.N.Y. 1993) ............................................................12

*In re Iridium Operating LLC*,
478 F.3d 452 (2d Cir. 2007) ...............................................12, 22, 34,

*In re Itel Corp.*,
17 B.R. 942 (9th Cir. BAP 1982) .....................................................25

*In re Lomas Financial Corp.*,
No. 90 Civ. 7827, 1991 WL 21231 (S.D.N.Y. Feb. 11, 1991) ......32, 33

*In re Masters, Inc.*,
141 B.R. 13 (Bankr. E.D.N.Y. 1992) ..................................................22

*In re Muma Servs. Inc.*,
279 B.R. 478 (Bankr. D. Del. 2002) ...................................................20

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978) ............................................................................20

Page

*In re Northstar Energy, Inc.*,
315 B.R. 425 (Bankr. E.D. Tex. 2004)) ........................................................ 20, 25
*In re Orion Pictures Corp.*,
21 F.3d 24 (2d Cir. 1994) ............................................................................ 25, 31, 32

*Protective Comm. For Indep. Stockholders of*
*TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968) ...................................................................................... 23, 24, 33

*Sea Harvest Corp. v. Riviera Land Co.*,
868 F.2d 1077 (9th Cir. 1989) ...................................................................... 42

*In re Sentry Operating Company of Texas, Inc.*,
264 B.R. 850 (Bankr. S.D. Tex. 2001) ........................................................ 37

*In re Trout*
108 B.R. 235 (Bankr. D.N.D. 1989) ............................................................ 23, 24

*Variety Corp. v. Howe*
516 U.S. 489 (1996) ...................................................................................... 42

## B. STATUTORY PROVISIONS

11 U.S.C. § 107 ............................................................................................ 21

11 U.S.C. § 107(b)(1) .................................................................................. 24

11 U.S.C. § 107(c) ........................................................................................ 25

11 U.S.C. § 524(g) ........................................................................................ 19, 40

11 U.S.C. § 1123(a)(4) ................................................................................ 37

11 U.S.C. §1124 ............................................................................................ 14

28 U.S.C. § 158(a)(1) .................................................................................. 10

Page

**C. RULES**

FED. R. BANKR. P. 9019 .................................................................... 22

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 13(2)(2000) ..... 44

MODEL RULES OF PROF'L CONDUCT R. 5.6(b) ..................................... 43

III.
## STATEMENT OF APPELATE JURISDICTION

The Ad Hoc Committee of Asbestos Personal Injury Claimants[1] (the "Ad Hoc Committee") brings this appeal under Title, 28, United States Code, section 158(a)(1), which gives district courts of the United States jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy courts.  28 U.S.C. § 158(a)(1).  This Court has jurisdiction because this is an appeal from a final order of the bankruptcy court.

IV.
## STATEMENT OF ISSUES PRESENTED
## AND APPLICABLE STANDARDS OF REVIEW

A.    ISSUES PRESENTED:

1.    Did the Bankruptcy Court err in approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs without full disclosure of the material terms of those Settlement Agreements to parties in interest?

2.    Did the Bankruptcy Court err in approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs without having those Settlement Agreements filed as part of the public record of the jointly administered bankruptcy cases?

---

[1] The Ad Hoc Committee of Personal Injury Asbestos Claimants consists of James J. Demahy, Individually and as the Independent Executrix of the Estate of Lydia Demahy, deceased, represented by Bryan O. Blevins, Jr., Provost Umphrey Law Firm L.L.P., Beaumont, Texas; Estelle Moore, Personal Representative of the Estate of Royce Wilfred Moore, represented by Russell Budd and Natalie Duncan, Baron & Budd, P.C., Dallas, Texas; John Hellen, Personal Representative of the Estate of Harwood Hellen, deceased, represented by Brent Coon and Lou Thompson Black, Brent Coon & Associates, Beaumont and Houston, Texas and Cleveland, Ohio; Robert Haun, represented by Steven Kazan, Kazan, McClain, Abrams, Lyons & Greenwood, A Professional Law Corporation, Oakland, California; George Winter represented by Al Brayton, Brayton Purcell, Novato and Los Angeles, California, Portland, Oregon, and Salt Lake City, Utah; and Charles Kloock represented by Thomas M. Wilson, Kelley & Ferraro, LLP, Cleveland, Ohio.

3.      Did the Bankruptcy Court err in approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs?

4.      Did the Bankruptcy Court err in finding that the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs were fair and reasonable?

5.      Did the Bankruptcy Court err in finding that the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs were in the best interests of creditors of the estates?

6.      Did the Bankruptcy Court err in applying the factors to be considered when approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs?

7.      In approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs, did the Bankruptcy Court err in failing to afford appropriate consideration to the objections raised by the Ad Hoc Committee of Asbestos Personal Injury Claimants whose members are in the same class of creditors as the Certain Asbestos-Related Personal Injury Plaintiffs?

8.      Did the Bankruptcy Court err in approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs where those Settlement Agreements will result in different treatment of claims in the same class?

9.      Did the Bankruptcy Court err in approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs where approval of those Settlement Agreements will discriminate against asbestos personal injury claimants who do not have pre-confirmation settlement agreements with the Debtors?

10.      Did the Bankruptcy Court err in approving the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs that provide for the treatment of future asbestos claims without meeting the requirements specified in 11 U.S.C. § 524(g)?

11.      Did the Bankruptcy Court err in approving the Settlement Agreements with Certain Asbestos-Related Personal Injury

Plaintiffs that may be interpreted to restrict a lawyer's right to practice and thus are in violation of ethics rules?

12. Did the Bankruptcy Court err in finding there was not any merit to the part of the Ad Hoc Committee's objection to approval of the Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs which were based upon "the ethics rules which subsume the specter of binding lawyers to a particular course of action?"

## B.    APPLICABLE STANDARDS OF REVIEW:

"The bankruptcy court's articulation of Rule 9019's standard for evaluating a settlement is a legal issue subject to *de novo* review." *In re Iridium Operating LLC*, 478 F.3d 452, 461 n.13 (2d Cir. 2007).  The standard of review of the bankruptcy court's application of that standard in approving a settlement is abuse of discretion. *Id.* ("We review for abuse of discretion the reasonableness of the court's application of the Rule in approving the Settlement."); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426-27 (S.D.N.Y. 1993)("The standard for review is whether the Bankruptcy Judge abused his discretion in approving the settlement.").

## V.
## STATEMENT OF THE CASE AND THE FACTS

## A.    STATEMENT OF CASE

This case is before this Court on appeal from a final order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The Ad Hoc Committee of Asbestos Personal Injury Claimants appeals from the Bankruptcy Court's Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a),

Approving Certain Settlement Agreements Between Dana Corporation and

Certain Asbestos-Related Personal Injury Plaintiffs (Docket No. 5995).

**B.     STATEMENT OF THE FACTS**

> **1.     The Debtors file for bankruptcy and propose a plan of reorganization.**

Dana Corporation ("Dana") and forty of its domestic direct and indirect

subsidiaries (the "Debtors") filed voluntary petitions for relief under chapter

11, title 11, of the United States Code (the "Bankruptcy Code") on March 3,

2006.  Motion of Debtor Dana Corporation for an Order, Pursuant to Sections

105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a),

Approving Certain Settlement Agreements Between Dana Corporation and

Certain Asbestos-Related Personal Injury Plaintiffs (the "Settlement

Motion") at 2, ¶ 1 (Docket No. 6724).

On October 23, 2007, the Debtors filed the Third Amended Disclosure

Statement with Respect to Third Amended Joint Plan of Reorganization of

Debtors and Debtors in Possession (the "Disclosure Statement") (Docket No.

6669) and the Third Amended Joint Plan of Reorganization of Debtors and

Debtors in Possession (the "Plan"), (Docket No. 6671).

> **2.     The Debtors' Plan classifies and treats asbestos personal injury claims.**

The Plan classifies all asbestos personal injury claims as Class 3

Claims and states that those claims are unimpaired and will be Reinstated

on the Effective Date.  Plan at 25, Article II.B.6.  "Reinstated" or

"Reinstatement" are defined in the Plan to mean "rendering a

Claim or Interest unimpaired with the meaning of Section 1124 of the

Bankruptcy Code.[2]"  Plan at 16, Article I.A.164.

Dana has been named as a defendant in a large number of lawsuits

relating to its sale of certain automatic gaskets containing asbestos and the

alleged exposure of people to asbestos as a consequence of contact with those

gaskets.  Settlement Motion at 4, ¶ 9.

As of the date of the hearing on the Settlement Motion, there were

approximately 133,000 asbestos-related personal injury claims pending

against Dana.   Hr'g Tr. (*In re Dana Corporation, et al.*, Case No. 06-10354)

12:  16-22, Nov. 15, 2007.

---

[2] Section 1124 provides that "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan — (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default — (a) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured; (B) reinstates the maturity of such claim or interest as such maturity existed before the default; (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (D) if such claim or interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

3.    **The Debtors file their Settlement Motion seeking approval of certain sealed asbestos settlement agreements.**

On October 26, 2007, three days after the filing of the Plan, Dana filed the Settlement Motion (Docket No. 6724) seeking the Bankruptcy Court's approval of an unspecified number of undisclosed settlement agreements that settle approximately 7,500 unidentified asbestos personal injury claims for payments totaling approximately $2 million.[3]  Settlement Motion at 7-8, ¶¶ 17-18.

It was not possible to determine the terms of the settlement agreements or even the number of settlement agreements that Dana requested the Bankruptcy Court to approve because those settlement agreements were filed under seal and the Settlement Motion did not itself recite the terms of the various settlements or even the number of settlement agreements for which Dana was seeking approval.  Order Authorizing Debtor Dana Corporation to File Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs Under Seal (Docket No. 6709) (the "Order Sealing Settlement Agreements");[4] *see generally,* Settlement Motion.

---

[3]  Although the Settlement Motion does not specify the number of settlement agreements for which Dana is seeking approval, counsel for the Debtors stated during the hearing on the Settlement Motion that Dana was seeking approval of four settlement agreements.  Hr'g Tr. (*In re Dana Corporation, et al.,* Case No. 06-10354) 14:13 and 15:  17-19, Nov.15, 2007.

[4]  The Order Sealing Settlement Agreements was entered without notice or hearing one day after the Debtors filed the Motion of Debtor Dana Corporation for an Order Authorizing It to File Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs Under Seal (Docket No. 6693).

4. **The Ad Hoc Committee objects to approval of undisclosed settlement agreements.**

On November 8, 2007, the Ad Hoc Committee filed the Ad Hoc Committee of Asbestos Personal Injury Claimants' Objection to Motion of Debtor Dana Corporation for an Order, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), Approving Certain Settlement Agreements Between Dana Corporation and Certain Asbestos-Related Personal Injury Plaintiffs  and Motion to Continue the Hearing on the Settlement Agreements Until the Ad Hoc Committee Has the Opportunity to Review those Agreements (the "Ad Hoc Committee's Objection"), stating the Ad Hoc Committee's objection to approval of undisclosed settlements.  (Docket No. 6849).

As indicated by the full title of the document, the Ad Hoc Committee's Objection included, in the alternative, a request that the Bankruptcy Court continue the hearing on the Settlement Agreements until the Ad Hoc Committee was provided with copies of the Settlement Agreements and had the opportunity to review them.

In the Ad Hoc Committee's Objection, the Ad Hoc Committee explained that its counsel had requested copies of the Settlement Agreements from Dana's counsel and had volunteered to be bound by a confidentiality agreement regarding the personal information of individual settling plaintiffs that Dana purports to want to protect.  Ad Hoc Committee's Objection at 11

n.3.  As the Ad Hoc Committee's Objection notes, its counsel's request in that regard was rebuffed.  *Id.*

On November 14, 2007, on the eve of the hearing on the Settlement Motion, Dana filed its Reply in Support of Motion of Debtor Dana Corporation for an Order, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), Approving Certain Settlement Agreements Between Dana Corporation and Certain Asbestos-Related Personal Injury Plaintiffs ("Dana's Reply").  (Docket No. 6916.

### 5.    The Bankruptcy Court approves the undisclosed settlement agreements.

The hearing on the Settlement Motion was held on November 15, 2007. At the conclusion of the hearing, the Bankruptcy Court overruled the Ad Hoc Committee's objection to the Settlement Motion and approved the undisclosed settlement agreements.  Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 30:  18-19, Nov. 15, 2007.

The Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), Approving Certain Settlement Agreements Between Dana Corporation and Certain Asbestos-Related Personal Injury Plaintiffs (the "Order Approving Settlements") was entered on November 15, 2007.  (Docket No. 6929).

# VI.
## SUMMARY OF ARGUMENT

The Bankruptcy Court erred in approving the undisclosed Settlement Agreements and thereby denying the unfettered public access normally afforded to papers filed in bankruptcy cases and especially the rights of creditors to know what deals a debtor is entering into with other creditors. Access to bankruptcy records may be restricted only in very narrow, specified instances which do not encompass the Settlement Agreements that are at issue in this appeal. The Bankruptcy Court's error is clear from the numerous court decisions requiring that settlement agreements in particular not be concealed from creditors.

The Bankruptcy Court also erred in failing to apply the well-established factors that a court must consider in determining if a settlement is fair and reasonable. Because the Bankruptcy Court embarked upon a course of approving secret settlements, it did not make a record of any grounds upon which the settlements might be approved. In fact, the Bankruptcy Court provided no indication that it considered *any* of the factors prescribed by the case law, making only the conclusory statement that the undisclosed Settlement Agreements were "fair and reasonable" and "in the best interests of the Debtors' estates." The creditor members of the Ad Hoc Committee, not being allowed to know the terms of the Settlement Agreements, were effectively denied the right to resist the Debtors' Settlement Motion.

The Bankruptcy Court further erred in approving the Settlement Agreements on the eve of confirmation because the Settlement Agreements result in a different and undisclosed treatment of many thousands of asbestos personal injury claims — all of which are classified by the Debtors as Class 3 Claims — from the treatment afforded other members of Class 3, contrary to the requirements of 11 U.S.C. § 1123(a)(4).

The Bankruptcy Court further erred in approving the Settlement Agreements because the Settlement Agreements provide for the treatment of future asbestos claims without the Debtors' having met all of the requirements of 11 U.S.C. § 524(g), Congress' explicit statute setting forth the requirements for dealing with future asbestos liabilities in bankruptcy cases, especially its requirement that a neutral court-appointed future claims representative endorse any plan to deal with such claims. Approval of the Settlement Agreements by the Bankruptcy Court sanctions the Debtors' treatment of future asbestos demands in a manner not contemplated by 11 U.S.C. § 524(g).

Finally, the Bankruptcy Court erred in approving the Settlement Agreements because the terms of those agreements, as described in the Settlement Motion, can be interpreted to limit a lawyer's right to practice, contrary to ethical rules governing the practice of law. A court should not approve any agreement that has terms that have even the appearance of impropriety.

**VII.**

**ARGUMENT**

A.    **THE BANKRUPTCY COURT ERRED IN APPROVING THE SETTLEMENT AGREEMENTS WITH CERTAIN ASBESTOS-RELATED PERSONAL INJURY PLAINTIFFS WITHOUT HAVING THOSE SETTLEMENT AGREEMENTS FILED AS PART OF THE PUBLIC RECORD OF THE JOINTLY ADMINISTERED BANKRUPTCY CASES.**

     1.    **Papers filed in bankruptcy cases are public records and are open to scrutiny.**

The right of public access to judicial records is well established in American jurisprudence as a matter of common law. *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597-99 (1978). The general openness of public records extends to bankruptcy courts as well. As stated by one court, "There is a strong presumption in favor of public access to bankruptcy proceedings and records. During a chapter 11 reorganization, a debtor's affairs are an open book and the debtor operates in a fish bowl." *In re Alterra Healthcare Corp.,* 353 B.R. 66, 73 (Bankr. D. Del. 2006); *see also, In re Northstar Energy, Inc.,* 315 B.R. 425, 428 (Bankr. E.D. Tex. 2004) (stating "[Section] 107(a)'s directive for open access flows from the nature of the bankruptcy process – which is heavily dependent upon creditor participation and which requires full financial disclosure of debtor's affairs."); *In re Muma Servs., Inc.,* 279 B.R. 478, 484 (Bankr. D. Del. 2002) (noting section 107(a)'s prescription for public accessibility in bankruptcy cases); *In re Epic Assocs. V,* 54 B.R. 445, 447 (Bankr. E.D. Va. 1985) (concluding that "[s]ection 107(a) of the Code

creates a presumption in favor of public access to court records" filed in

bankruptcy cases).

The right of public access to bankruptcy court records and files

is codified in 11 U.S.C. § 107, which provides:

(a)    Except as provided in subections (b) and (c) of this section,
       and subject to section 112, a paper filed in a case under
       this title and the dockets of a bankruptcy court are public
       records and open to examination by an entity at
       reasonable times without charge.

(b)    On request of a party in interest, the bankruptcy court
       shall, and on the bankruptcy court's own motion, the
       bankruptcy court may-

       (1)    protect an entity with respect to a trade secret or
              confidential research, development, or commercial
              information; or

       (2)    protect a person with respect to scandalous or
              defamatory matter contained in a paper filed in a
              case under this title.

As stated by one court:

> It appears that § 107 is intended to protect reputations, trade
> secrets and systemic integrity, and is generally intended to
> protect debtors as they would be protected in the commercial
> setting, *when such protection does not compromise the
> public's need or right to have access to bankruptcy cases.*

*In re Hemple,* 295 B.R. 200, 201 (Bankr. D. Vt. 2003)(emphasis supplied).

>    2.    **Settlement agreements cannot be concealed from creditors,
>           because shielding such agreements from evaluation by creditors
>           defeats the purpose of Rule 9019 of the Federal Rules of
>           Bankruptcy Procedure.**

The procedural mechanism for obtaining approval of a settlement with

a debtor is Rule 9019.  As the Second Circuit Court of Appeals recently

observed, the purpose of Rule 9019 is to prevent a debtor from making secret

deals:

> Bankruptcy Rule 9019, unique in that it does not have a parallel
> section in the Code, has a "clear purpose . . . to prevent the
> making of concealed agreements which are unknown to the
> creditors and unevaluated by the court."

*Iridium Operating*, 478 F.3d at 461 (quoting *In re Masters, Inc.*, 141
B.R. 13, 16 (Bankr. E.D.N.Y. 1992)).

Courts recognize that Rule 9019 is intended to provide creditors with

the opportunity to evaluate a proposed settlement and to object and be heard

if they find it unsatisfactory.

> The purpose of the procedural rules governing notice to creditors
> is to allow those parties with a pecuniary interest in the
> settlement to have an opportunity to be heard and to object if
> they find it unsatisfactory.

*In re Masters, Inc.*, 149 B.R. 289, 292-93 (E.D.N.Y. 1992).

> This rule [Rule 9019] prevents debtors from entering into secret
> agreements and safeguards the rights of creditors who otherwise
> might be harmed by providing them with an opportunity to
> object to the proposed settlement if they find it unsatisfactory.
>
>                            . . .
>
> Rule 9019 was conceived to prevent behind the scenes dealing
> such as this.

*Columbia Gulf Transmission Co. v. Louisiana Nat. Gas Pipeline, Inc.*,
Civ. A. No. 93-239, 1994 WL 693361, at *3 (E.D. La. Dec. 9, 1994).

The Ad Hoc Committee members and other creditors were entitled to
full disclosure of all of the terms of the proposed settlements by reviewing the
actual Settlement Agreements and should not have been limited to relying on
the Debtors' self-serving description of only *some* of the terms of the
settlements.

In the language of one court, the applicable rules [Rules 9019(a) and
2002(a)(3)]

> provide for the compromise or settlement of a controversy only
> upon notice, hearing and court approval.  The reason for these
> requirements in a bankruptcy case is not hard to discern.  The
> Bankruptcy Code envisions a process whereby all parties in
> interest have equal access to information regarding the debtor's
> assets, liabilities and claims.  As contrasted to a non-bankruptcy
> situation, once a person elects to avail himself of the benefits of
> the federal bankruptcy laws by the filing of a petition, he can no
> longer expect to have any financial secrets.    The Code
> contemplates a full and complete disclosure.

*In re Trout*, 108 B.R. 235, 238 (Bankr. D.N.D. 1989).

In *TMT Trailer Ferry*, the Supreme Court held that, in evaluating a
proposed compromise or settlement, a bankruptcy court must base its
conclusion upon a "comprehensive consideration of all relevant factors."
*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.
Anderson,* 390 U.S. 414, 434 (1968).

In implementing the Supreme Court's mandate that a court evaluating
a settlement must avoid "mere boiler plate approval" of a proposed

settlement, *TMT Trailer Ferry*, 390 U.S. at 434, and must consider all relevant factors, one court has stated:

> Achieving this result mandates that there be complete disclosure of the settlement terms by the parties to the settlement. Without full disclosure an informed decision on the merits of the settlement, — how it affects the parties in interest or the case generally cannot be made. ***Moreover, without complete information potential exists for abuse. Partial disclosure is tantamount to no disclosure at all and is a breach of the spirit and intent of Rules 9019 and 2002.***

*Trout*, 108 B.R. at 239 (emphasis supplied).

Complete disclosure of the settlement terms is certainly not satisfied by token disclosure only to the *court*. Creditors cannot determine how a settlement affects them if they are not provided with complete disclosure of all of the terms of that settlement. As the *Trout* court noted, where — as here — there is only partial disclosure, such disclosure is the equivalent of no disclosure at all.

### 3. The Settlement Agreements do not fit within the narrow confines of the exceptions to public access to bankruptcy records.

There is no indication that the exceptions to section 107 involving false or defamatory material, or protecting one from identity theft, are relevant to this instant case. Instead, the Debtors relied on subsection 107(b)(1) that the settlement terms are somehow protected trade secrets or confidential research, development, or commercial information. Settlement Motion at 5-6, ¶¶ 11-13. As stated earlier, the Ad Hoc Committee agreed to be bound by a

confidentiality agreement regarding all personal information of all settling plaintiffs. [5]

Commercial information is information which would result in "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Orion Pictures Corp.* 21 F.3d at 27-28 (quoting *Ad Hoc Protective Comm. For 10 ½% Debenture Holders v. Itel Corp. (In re Itel Corp.),* 17 B.R. 942 944 (9th Cir. BAP 1982)). "[D]isclosure of [the] information [must] reasonably be expected to cause the entity commercial injury." *Northstar Energy,* 315 B.R. at 249 (quoting *In re Global Crossing, Ltd.,* 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003)). Moreover, before allowing a debtor to conceal information, a court must find that the information "is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors." *In re Barney's, Inc.,* 201 B.R 703, 708-09 (Bankr. S.D.N.Y. 1996). Settlement agreements do not fit this requirement.

---

[5] It bears noting that only in Dana's Reply did the Debtors decide to identify the "commercially sensitive information" that they claim is contained in the undisclosed Settlement Agreements as including "plaintiffs' identities, social security numbers . . ." Dana's Reply at 7. As previously stated, the Ad Hoc Committee, through it counsel, had offered to be bound by a confidentiality agreement protecting such information. Section 107(c) of the Bankruptcy Code provides that a bankruptcy court can protect such information from disclosure if disclosure would create undue risk of identity theft or other unlawful injury to the individual or the individual property — *not* because such information is "commercial information."

4.    **Courts require that settlement agreements with tort claimants be made public because those agreements do not relate to the debtors' commercial operations.**

a.    *Courts routinely reject arguments that settlements should be concealed from the public and from creditors.*

Settlements with tort claimants which do not contain commercial information or trade secrets cannot be approved under seal in a bankruptcy case. In *Alterra,* the reorganized debtor, which was in the business of providing assisted living arrangements and healthcare to elderly residents with Alzheimer's and other geriatric related diseases, requested approval to file under seal settlement agreements with certain tort claimants regarding allegations of neglect received at the debtor's facilities. Considering the nature of the debtor's business, the *Alterra* court reasoned that information relating to monthly charges for housing and the costs associated with caring for the residents would be commercial in nature. But the settlements in question did not implicate that information. The court held that information regarding the settlements with tort claimants "[did] not relate to the Reorganized Debtor's commercial operations nor does it unfairly advantage competitors." *Alterra*, 353 B.R at 76.

The *Alterra* court specifically rejected the debtor's argument that revealing the contents of the settlements in question would harm the estate because it would give other tort claimants leverage to force higher settlements for themselves. The court stated: "An unfair advantage to a tort

claimant (creditor) of a debtor, however, does not create an unfair advantage to its market competitors." *Id.*

Likewise, in *Geltzer v. Andersen Worldwide, S.C.,* No. 05 Civ. 3339, 2007 WL 273526 (S.D.N.Y. Jan. 30, 2007), the Southern District of New York denied a Chapter 7 trustee's request to approve under seal a settlement agreement with Andersen resolving malpractice and other torts relating to services provided by Andersen.   The rationale provided for sealing the settlement agreement was that:

> "public disclosure of the Settlement Agreement would enable other claimants against Anderson to determine how much Anderson is currently willing, and able, to pay in respect to the Trustee's claim, thereby potentially undercutting Anderson's negotiating leverage with such claimants."

*Id.* at *4.

The *Geltzer* court found that rationale to be a "wan excuse for impinging on the public's right of access to judicial documents," and denied the motion to consider the settlement under seal.  *Id.*

A similar argument was also rejected by the court in *In re Global Vending,* Bankr. No. 04-23562, Adv. No. 05-2417, 2006 WL 1679732, at *1 (Bankr. S.D. Fla. May 16, 2006), where approval was sought of a sealed settlement agreement between American Express and the chapter 7 trustee in a preference action.  American Express wanted approval under seal of its settlement agreement with a chapter 7 trustee regarding preference actions

brought against American Express because of numerous other actions

pending against American Express. *Id.* The court stated it was

> hard pressed to understand how the amount AmEx would pay
> under the settlement of the avoidance action here would shed
> light on "confidential commercial information" or give its
> competitors an unfair business advantage.

*Id.* at *3.

The court concluded that the motion "does not satisfy the exceptions to

the general rule that all documents in bankruptcy cases are to be available to

the general public" and denied the motion. *Id.*

The *Global Vending* court made its ruling without prejudice to the

trustee's refiling his motion in consideration of the factors identified in *In re*

*Hemple,* 295 B.R. 200 (Bankr. D. Vt. 2003). *Hemple* sets out a list of factors

for courts to consider when the request under seal is aimed at protecting the

interest of a third party. Those factors include:

> (1)   the necessity of the settlement to the viability of the
>         bankruptcy case;
>
> (2)   whether the confidentiality provision is truly essential to
>         the settlement, i.e. whether the settlement would be
>         withdrawn if the confidential provision were not honored;
>
> (3)   whether the creditors have been notified of the request for
>         approval of the settlement without disclosure of the
>         amount or terms of settlement, and, if so, whether any
>         objection was interposed;
>
> (4)   if there has been an objection to the request to file the
>         agreement under seal, whether the objection
>         demonstrates harm to the public's need to know;

(5)    whether the creditors will clearly benefit from the settlement notwithstanding a lack of access to the specific terms of that settlement;

(6)    whether the debtor will suffer irreparable harm if the settlement agreement is not filed under seal;

(7)    whether the parties would be able to keep the terms of the settlement confidential in the absence of a bankruptcy filing;

(8)    whose interests are being protected by allowing the filing of the settlement agreement under seal and whether there is any negative impact either on the estate or in the treatment of other interested parties in the case;

(9)    what is the likelihood of other parties actually obtaining the details of the agreement if it is not filed under seal; and

(10)    whether the document needs to be kept under seal permanently or some shorter time period could suffice.

*Hemple,* 295 B.R. at 202.

Needless to say, no analysis of the *Hemple* factors appears in the record of this case.

The *Geltzer, Global Vending,* and *Hemple* cases all involve requests by third party defendants to keep under seal the terms of settlement agreements pursuant to which those third parties were to pay funds into the bankruptcy estate and *in none of those cases did the court find it appropriate to protect the confidentiality of the settlement agreements.*

### b.    Debtors may not conceal pre-confirmation bankruptcy settlements of tort claims.

The instant appeal involves settlement agreements pursuant to which the Debtors will pay settlement money to co-members of the very class of creditors to which the members of the Ad Hoc Committee belong. There is no support for a debtor to request approval under seal of secret payment to unknown creditors who belong to a class of creditors under debtor's plan of reorganization. Even in *In re Dow Corning Corp.,* 244 B.R. 634, 672 (Bankr. E.D. Mich. 1999), where the identity of breast implant recipients had been kept confidential for most of the case, the bankruptcy court ruled that confidentiality had to be lifted at confirmation and prior to the actual disbursements of proceeds. The court noted that it had informed claimants to be aware that " . . . before checks get written, . . . that at some point their identity will have to be known. This is a public process." *Id.*

Moreover, according to the Debtors' own admission, treating asbestos personal injury claims in the ordinary course of the Debtors' businesses will not affect the Debtors' viability. In estimating the Debtors' potential liability for pending  and future asbestos claims and their probable insurance recovery for that projected liability, the Debtors conclude that they expect their "assets will be more than sufficient to pay those potential liabilities." Disclosure Statement, VIII.B.3. Taking the Debtors at their word, disclosure of the Settlement Agreements would not affect the Debtors' post-bankruptcy viability.

The Debtors in this case sought approval of undisclosed settlements with some but not all asbestos claimants.   The Debtors argue that to reveal the settlement terms might give other asbestos claimants undue leverage in negotiating their respective settlements with the Debtors.  As the *Alterra* correctly reasoned, Section 107 cannot be read to apply to documents that, if disclosed, might enable other tort claimants to use those documents to their advantage.  As will be discussed below, the Debtors' justification rings especially false where the Debtors have classified those "other" remaining tort claimants in the very same class with the settling tort claimants since all claims classified together must receive equal treatment under § 1123(a)(4).

> **5.    None of the Debtors' authority purporting to support not disclosing the Settlement Agreements actually involved settlement agreements.**

The Debtors should recognize that courts are loathe to afford settlement agreements the protections of 11 U.S.C. § 107.  In fact, none of the cases relied upon in Dana's Reply to support approval of the undisclosed Settlement Agreements involve a settlement agreement.

The Debtors rely on *In re Orion Pictures Corp.,* 21 F.3d 24 (2d Cir. 1994), a case that has nothing to do with a settlement agreement.  The Second Circuit merely affirmed the decisions of the district and bankruptcy courts to seal a *promotional agreement* where disclosing the "'overall structure, term and conditions of the McDonald's Agreement, renders very likely a direct and adverse impairment of Orion's ability to negotiate

favorable promotion agreements . . . thereby giving Orion's competitors an unfair advantage.'" *Orion Pictures Corp.,* 21 F.3d at 28.

Similarly, the agreements that had been sealed by the United States Bankruptcy Court for the Northern District of Illinois in *BA Leasing Parties v. UAL Corp.*, Nos. 03 C 2232, 03 C 2414, 2003 WL 22176068 (N.D. Ill. Sept. 15, 2003) were not settlement agreements. Rather, the agreements were stipulations regarding leasing of aircraft. *Id.* at *1 n.1.

The district court in *UAL* saw no reason to question the business judgment of the debtor, its professionals or the creditors' committee on what were *business transactions* — agreements regarding aircraft leases — not settlement agreements.

Likewise, the information afforded protection from disclosure in *In re Lomas Financial Corp.*, No. 90 Civ. 7827, 1991 WL 21231 (S.D.N.Y. Feb. 11, 1991) was not in a settlement agreement. Rather, the information was contained in an outline for a future plan of reorganization that the bankruptcy court characterized as an "invitation to negotiate." Id. at *1. The bankruptcy court had ordered the information sealed because of the Debtors' claims that if overall figures and disclosed percentage allocations among classes to whom certain distributions were proposed in the outline were made public it "would affect trading in Debtors' listed securities and trading in claims against Debtors." *Id.*

Even so, the district court found that the sealing was overbroad and modified the bankruptcy court's order "so as to seal only the four designated sentences" and affirmed the sealing order as so modified.  *Id.*

**B.    THE BANKRUPTCY COURT ERRED IN APPLYING THE FACTORS TO BE CONSIDERED WHEN APPROVING THE SETTLEMENT AGREEMENTS WITH CERTAIN ASBESTOS-RELATED PERSONAL INJURY PLAINTIFFS**

> **1.    The Bankruptcy Court ignored the standards and factors to be applied in determining if a settlement agreement should be approved.**

The Supreme Court articulated the standards by which a bankruptcy court is to determine if it should approve a compromise or settlement agreement in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).  The Supreme Court requires that a bankruptcy court make an "informed and independent judgment" that "a proposed compromise is fair and equitable."  *Id.* at 424;  *see also In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (stating that "the [Supreme] Court required that the Bankruptcy Court make an informed, independent judgment as to whether a settlement is 'fair and equitable' and 'in the best interests of the estate.').

Courts have enumerated the following factors as most pertinent in determining whether a proposed settlement is fair and equitable:

> (1)    the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2)    the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

(3)     "the paramount interests of the creditors," including each
        affected class's relative benefits "and the degree to which
        creditors either do not object to or affirmatively support
        the proposed settlement";

(4)     whether other parties in interest support the settlement;

(5)     the "competency and experience of counsel" supporting,
        and "[t]he experience and knowledge of the bankruptcy
        court judge" reviewing, the settlement;

(6)     "the nature and breadth of releases to be obtained by
        officers and directors"; and

(7)     "the extent to which the settlement is the product of arm's
        length bargaining."

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007).

## 2.    The record demonstrates only conclusory references to a minority of the *Iridium factors*.

Although Dana recites the *Iridium* factors in its Settlement Motion.

Settlement Motion at 9, ¶ 23, at the hearing, the only factor on which Dana

urged approval of the Settlement Motion is the second factor set forth by the

Second Circuit in *Iridium*:

> If the Asbestos Personal Injury Claimants' claims are not
> resolved consensually, Dana will continue to incur the cost of
> defense, and expend other resources in connection with, the
> active litigation of these claims, including internal time,
> attorneys' fees, experts' fees, other expenses relating to the
> preparation of pleadings and other documents and trials.

Settlement Motion at 11, ¶ 27.

Counsel for the Debtors proffered conclusory testimony that "the

benefits of the settlement agreement certainly outweighs the prospect of

what could happen in litigation and uncertainties inherent in the litigation," although this testimony is rendered meaningless in the absence of any record of what the terms of the Settlement Agreements are.  Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 17:  19-22, Nov. 15, 2007.

Counsel for the Official Committee of Unsecured Creditors (the "Creditors' Committee") and counsel for an unofficial committee of bond holders (the "Bond Holders' Committee") both took the position that the settlements were a "good deal" for the Debtors' estates and that they supported the Settlement Motion, giving no factual basis for why the settlements were a "good deal."  Hrg. Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 28:  13-16 and 17-24, Nov. 15, 2007.  This is again conclusory and not supported by any evidence that would allow a finder of fact to reach such a conclusion.[6]

On the other hand, the Ad Hoc Committee itself negated one of the *Iridium* factors.  The Ad Hoc Committee made it clear that its members affirmatively opposed approval of undisclosed settlement agreements to settle claims of other members in the same class (Class 3, the affected class) as the

---

[6]  Additionally, given the treatment of asbestos personal injury claims in the Plan, the endorsement of the secret settlements by the Creditors Committee and the Bond Holders' Committee rings hollow.  The Plan treats asbestos personal injury claims, Class 3 Claims, by providing that they will be Reinstated on the Effective Date.  Plan at 25, Article II.B.6.  Stated differently, according to the Debtors, asbestos personal injury claims will "be passed through the Chapter 11 Cases" and dealt with  "in the ordinary course of [the Debtors'] businesses and consistent with past practices."  Disclosure Statement at 66, VIII.B.3.  As a result, the Settlement Agreements and any other transactions with holders of asbestos personal injury claims simply have no effect on the treatment of creditors who will receive distributions on account of their claims under the Plan like the constituents of both the Creditors Committee and the Bond Holders' Committee.

members of the Ad Hoc Committee.  *See* Ad Hoc Committee's Objection and
Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 23:  3-25 – 24:
1-25, 15:  1-6, Nov. 15, 2007.

> **3.    There is no indication what factors, if any, the Bankruptcy
> Court applied in approving the Settlement Agreements at issue.**

Neither the transcript of the hearing on the Settlement Motion nor the
Order Approving Settlements demonstrates that the Bankruptcy Court
considered all or even most of the *Iridium* factors that the Second Circuit has
determined are most pertinent in determining whether a proposed settlement
is fair and equitable.

At the conclusion of the hearing on the Settlement Motion, the
Bankruptcy Court only indicated the settlements had not been challenged on
the grounds of reasonableness and that the undisclosed settlement "indeed is
very beneficial to the estate."  Hr'g Tr., (*In re Dana Corporation, et al.*, Case
No. 06-10354), 28:  25  - 29:  1-5, Nov. 15, 2007.

The Order Approving Settlements also provides no indication of what
factors were considered by the Bankruptcy Court.  The Order Approving
Settlements only states that "the Settlement Agreements are fair and
reasonable and in the best interests of the estates."  Order Approving
Settlements at 1-2.

Accordingly, the Bankruptcy Court erred in applying (or in failing to
apply) the factors to be considered in approving the settlement agreements.

C.    THE BANKRUPTCY COURT ERRED IN APPROVING THE SETTLEMENT
      AGREEMENTS WITH CERTAIN ASBESTOS-RELATED PERSONAL INJURY
      PLAINTIFFS WHERE THOSE SETTLEMENT AGREEMENTS RESULT IN
      DIFFERENT TREATMENT OF CLAIMS IN THE SAME CLASS

   1.    Bankruptcy Claims in the same class must be provided the same
         treatment.

Section 1123(a)(4) of the Bankruptcy Code mandates that a plan of

reorganization "provide the same treatment for each claim or interest of a

particular class, unless the holder of a particular claim or interest agrees to

less favorable treatment."  11 U.S.C.  § 1123(a)(4); *In re AOV Indus., Inc.,* 792

F.2d 1140, 1151 (D.C. Cir. 1986);  *In re Dow Corning Corp.,* 244 B.R. 634, 666

(Bankr. E.D. Mich. 1999); s*ee also, In re Sentry Operating Co. of Tex., Inc.,*

264 B.R. 850, 863 (Bankr. S.D. Tex. 2001) ("In general, the Bankruptcy Code

is premised on the rule of equality of treatment.  Creditors with claims of

equal rank are entitled to equal distribution.").

"Even though neither the Code nor the legislative history precisely

defines the standards of equal treatment, the most conspicuous inequality

that § 1123(a)(4) prohibits is payment of different percentage settlements to

co-class members."  *AOV Indus.,* 792 F.2d at 1152.

In this instance, there can be no determination of precisely what

additional consideration is being given under the undisclosed settlement

agreements entered into on the eve of confirmation.  However, it appears that

members of the Ad Hoc Committee are not receiving equal treatment in

accordance with §1123(a)(4).  The Settlement Motion states that the favored

few whose settlements are the subject of that motion will be paid from a special reserve in the event that the Debtors' insurance is not available to pay their claims.  Motion to Approve Settlement at 12, ¶ 29.  The Plan provides the members of the Ad Hoc Committee or any other holders of Class 3 Claims with no such preferential treatment.

> 2.    **The asbestos claimant members of the Ad Hoc Committee are entitled to know whether other class member are receiving preferential treatments.**

In *In re Hibbard Brown & Co., Inc.,* 217 B.R. 41, 47 (Bankr. S.D.N.Y. 1998), the court was asked to approve a global settlement of numerous securities claims, pursuant to which there was variance of treatment.  In evaluating the fairness of the settlement, the court noted, "The Second Circuit has approved settlements where the class member received different percentages of recovery to take into account different factors so long as the settlement terms are rationally based on legitimate considerations." *In re Hibbard Brown & Co.*, 217 B.R. at 47, *citing In re Drexel Burnham Lambert Group, Inc.* 130 B.R. 910, 918-19, *aff'd,* 960 F.2d 285 (2d Cir. 1992) (approval of settlement agreement with Rule 7023 class where class members were divided in sub-classes and received different treatment).

The Ad Hoc Committee in this case is not arguing that every asbestos claim should receive a precisely identical recovery.  Although all asbestos claims are similar (as evidenced by the fact that the Debtors have placed them in the same class), each claim is unique, and may involve varying

damages and may or may not be subject to certain defenses. But the Ad Hoc

Committee is entitled under § 1123(a)(4) to know that they will receive

treatment with at least some approximate measure of equality as the parties

to the settlement agreements. As stated by the court in *Hibbard*, payment of

different percentages must be "rationally based on legitimate consideration."

*Id.* at 47. Equality of treatment is impossible to evaluate when the

settlement terms are hidden from comparison. The Ad Hoc Committee is

entitled to know that they will receive treatment approximately equal to the

claimants that have settled. Because the settlement agreements were

approved without disclosure of their terms, it is impossible to measure or

determine any equality of treatment among creditors that the Debtors

themselves placed into the same class.

D.   THE BANKRUPTCY COURT ERRED IN APPROVING THE SETTLEMENT
     AGREEMENTS WITH CERTAIN ASBESTOS-RELATED PERSONAL INJURY
     PLAINTIFFS THAT PROVIDE FOR THE TREATMENT OF FUTURE ASBESTOS
     CLAIMS WITHOUT MEETING THE REQUIREMENTS SPECIFIED IN 11 U.S.C. §
     524(g).

The Order is equally defective in impermissibly approving a scheme for

treating future asbestos demands without satisfying the prerequisites of 11

U.S.C. § 524(g), thereby violating due process.

According to the nebulous description contained in the Settlement

Motion, the undisclosed Settlement Agreements provide "**a mechanism for**

**addressing future cases that may be brought by the Tort Attorneys.**"

Settlement Motion at 7, ¶ 16 (emphasis supplied). In the bankruptcy context,

however, Bankruptcy Code Section 524(g) provides the exclusive means of addressing future asbestos demands. This Section prescribes a detailed set of conditions that must be satisfied—including the appointment of a legal representative to represent the interests of the future asbestos claimants—if a debtor intends to address future asbestos demands.

The Third Circuit has described Section 524(g) as providing a "unique funding mechanism [that] makes it possible for future asbestos claimants to obtain substantially similar recoveries as current claimants in a manner consistent with due process." *In re Combustion Eng'r., Inc.*, 391 F.3d 190, 234 (3d Cir. 2005). In fact, as expressly recognized by the Third Circuit:

> [The] requirements [of Section 524(g)] are specifically tailored to protect the due process rights of future claimants. For example, a court employing a § 524(g) channeling injunction must determine that the injunction is "fair and equitable" to future claimants, 11 U.S.C. § 524(g)(4)(B)(ii), and must appoint a futures representative to represent their interests. 11 U.S.C. § 524(g)(4)(B)(I). ***The court must also determine that the plan treats "present claims and future demands that involve similar claims in substantially the same manner."*** 11 U.S.C. § 524(g)(2)(B)(ii)(V). Finally, the statute requires that a 75% super-majority of claimants whose claims are to be addressed by the trust vote in favor of the plan. 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb).

*Combustion Eng'r.*, 391 F.3d at 234 n.45 (emphasis supplied); *see also In re G-I Holdings, Inc.*, 328 B.R. 691, 697 (D.N.J. 2005) (finding that 11 U.S.C. § 524(g) was designed to "protect the due process rights of the future [asbestos] claimants").

Thus, Section 524(g) attempts to assure equal treatment of present and future claimants. In this case, the Debtor seeks to provide one mechanism for the treatment of future claimants (in the undisclosed Settlement Agreements) and another different treatment for present claims (in the Plan) without complying with the safeguards Congress established for that purpose. Nondisclosure of the settlement terms for future asbestos claimants thwarts the very purpose of Section 524(g), since it is impossible to know whether there is in fact equal treatment of present and future asbestos claims.

The Third Circuit has held that creative use of other provisions of the Bankruptcy Code cannot accomplish an end run around the more specific requirements of Section 524(g). In *Combustion Eng'r.*, that court considered an appeal of a bankruptcy court order under § 105(a) that extended an asbestos channeling injunction to include third-party actions against non-debtors where the alleged liability was not derivative of the debtor. After noting that both the plain language of Section 524(g) and its legislative history provide no specific authority to extend a channeling injunction to these non-derivative third party actions against non-debtors, the Third Circuit ultimately held that "§ 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g), which is the means Congress prescribed for channeling the asbestos liability of a non-debtor."

*Combustion Eng'r*, 391 F.3d at 237, n. 50. In so holding, the Third Circuit

stated as follows:

> Because § 524(g) expressly contemplates the inclusion of third
> parties' liability within the scope of a channeling injunction—
> and sets out the specific requirements that must be met in order
> to permit inclusion—the general powers of § 105(a) *cannot be*
> *used to achieve a result not contemplated by the more specific*
> *provisions of § 524(g).*[7]

*Id.* at 236-37 (emphasis added).

Congress expressly crafted Section 524(g) to contain a detailed

methodology for addressing future asbestos demands that includes a

mechanism for assuring substantially similar treatment between present

claimants and future claimants. The Settlement Motion, however, uses a

combination of Rule 9019 and a bankruptcy court's confirmation powers to

make an end run around Section 524(g). The Bankruptcy Court's Order

Approving Settlements endorses and implements a scheme for treating future

asbestos demands without satisfying the more specific provisions Section

524(g). Just as the Third Circuit reversed a bankruptcy court order that

sought to achieve a result not contemplated by the more specific provisions of

Section 524(g), this Court should reverse the Bankruptcy Court's Order

---

[7] This holding is also consistent with the well-settled maxim that specific statutory provisions prevail over
more general provisions, and the Third Circuit cited to this maxim as support for its conclusion that "the
explicit limitations and requirements set forth in § 524(g) preclude the use of § 105(a) to extend application
of the trust/injunction mechanism to … [certain] non-debtors. 391 F.3d at 237, n.49 *(citing Varity Corp. v.*
*Howe,* 516 U.S. 489, 511 (1996) (interpreting the "the specific governs the general" canon of statutory
construction as "a warning against applying a general provision when doing so would undermine
limitations created by a more specific provision"); *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077,
1080 (9th Cir. 1989) (Section 105(a) "does not empower courts to issue orders that defeat rather than carry
out the explicit provisions of the Bankruptcy Code[.]"); 2 COLLIER ON BANKRUPTCY, ¶ 105.04 at 105-15
n.5; *In re Am. Hardwoods, Inc.,* 885 F.2d 621, 625-26 (9th Cir. 1989) ("[S]ection 105 does not authorize
relief inconsistent with more specific law.")).

Approving Settlements because it endorses the Debtors' attempt to address future asbestos demands in a manner not contemplated by the more specific provisions of Section 524(g).

**E.    THE BANKRUPTCY COURT ERRED IN APPROVING THE SETTLEMENT AGREEMENTS WITH CERTAIN ASBESTOS-RELATED PERSONAL INJURY PLAINTIFFS BECAUSE THE SETTLEMENT AGREEMENTS MAY BE INTERPRETED TO RESTRICT A LAWYER'S RIGHT TO PRACTICE AND THUS ARE IN VIOLATION OF ETHICS RULES.**

The Settlement Agreements, if accurately described in the Settlement Motion, may inadvertently and impermissibly restrict a lawyer's right to practice. Rule 5.6(b) of the Rules of Professional Conduct provides that "[a] lawyer shall not participate in offering or making (b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy."

Paragraph 19 of the Settlement Motion provides that:

[T]he Tort Attorneys have agreed not to schedule cases for trial against Dana, and agreed not to oppose any motions filed on Dana's behalf to continue a trial date, for a period of two years. In addition, the Settlement Agreements require that the Tort Attorneys submit all new cases and claims to Dana for potential resolution on an administrative basis . . . ***With respect to these future cases, the Settlement Agreements contain tolling provisions by which the Tort Attorneys agree to forbear from filing other claims that arise subsequent to the date of the Settlement Agreement for two years, and Dana similarly agrees to toll the statute of limitations.*** (emphasis supplied).

The ABA's annotations to Rule 5.6(b) provide a specific example of an impermissible agreement: "[A] plaintiff's lawyer is not allowed to promise not to represent anyone else with similar claims against the defendant, and

the defendant's lawyer is not allowed to ask." While the prohibition against filing other claims described in the Settlement Motion is limited to two years, it may nonetheless be an agreement that impermissibly restricts a lawyer's right to practice. According to the comment of the Restatement (Third) of the Law Governing Lawyers § 13(2)(2000), "such agreements are void and unenforceable."

Because the Settlement Agreements here have not been disclosed, the perception of possible impropriety cannot be overcome by examining the actual language in the Settlement Agreements to ascertain the parties' intent and whether a lawyer's right to practice is impermissibly restricted. In the absence of disclosure, one can only draw a negative inference. For that reason, it was error to approve the Settlement Agreements without disclosing them to parties in interest.

## VIII.
## CONCLUSION

The Bankruptcy Court committed reversible error in (1) denying creditors and other parties in interest the ability to evaluate the Settlement Agreements; (2) approving the Settlement Agreements without disclosing them to creditors, especially the members of the Ad Hoc Committee; (3) failing to apply or consider the appropriate factors in approving the Settlement Agreements; (4) approving the Settlement Agreements that result in different treatment of claims that are in the same class; (5) approving the Settlement Agreements that provide for the treatment of future asbestos

claims without meeting the requirements of 11 U.S.C. § 524(g); and (6)

approving the Settlement Agreements that may be interpreted to limit a

lawyer's right to practice in violation of applicable ethical rules.

For the foregoing reasons, the Ad Hoc Committee respectfully prays;

(1) that the Order Approving Settlements be VACATED; (2) that the

Settlement Motion will be DENIED; and (3) for any and all other relief to

which the Ad Hoc Committee may be justly entitled.

Dated:  January 22, 2008

Respectfully submitted,

/s/ Douglas T. Tabachnik
Douglas T. Tabachnik (DT 6337)
LAW OFFICES OF
DOUGLAS T. TABACHNIK, P.C.
Suite C
Woodhull House
63 West Main Street
Freehold, New Jersey 07728
(732) 792-2760

and

Sander L. Esserman (SE 0356)
Robert T. Brousseau (RB 4873)
Jo E. Hartwick (JH 4109)
STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas  75201
(214) 969-4900

**ATTORNEYS FOR THE
AD HOC COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS**