JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball (CB 8203)
Steven C. Bennett (SB 2740)

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox (HL 3046)
Robert W. Hamilton (RH 3130)
Nicholas M. Miller (NM 7516)

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia  30309-3053
Telephone:  (404) 521-3939
Facsimile:  (404) 581-8330
Jeffrey B. Ellman (JE 5638)

Attorneys for Appellee Dana Corporation

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Dana Corporation, *et al.*, | : | Bankruptcy Case No. 06-10354 (BRL) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | |
| AD HOC COMMITTEE OF PERSONAL INJURY ASBESTOS CLAIMANTS, | : | District Court Case No. 08-CV-00020 (JGK) |
| | : | |
| Appellant, | : | Judge John G. Koeltl |
| | : | |
| vs. | : | |
| | : | |
| DANA CORPORATION, | : | |
| | : | |
| Appellee. | : | |
| | : | |

## BRIEF OF DEBTOR-APPELLEE DANA CORPORATION

# TABLE OF CONTENTS

**Page No.**

STATEMENT OF APPELLATE JURISDICTION ................................................................... 1

STANDARD OF REVIEW ................................................................................................... 1

STATEMENT OF THE CASE.............................................................................................. 2

    Preliminary Statement.................................................................................................. 2

    Procedural History ...................................................................................................... 3

    Statement of Facts....................................................................................................... 6

ARGUMENT .................................................................................................................... 10

    A.    The Ad Hoc Committee Cannot Demonstrate an Abuse of the Bankruptcy Court's Discretion in Approving the Settlement Agreements ............................ 10

    B.    The Ad Hoc Committee Is Not Entitled to Review the Underlying Settlement Agreements ......................................................................................... 14

        1.    Appellant's Challenge of the Sealing Order Under the Disguise of Appealing the Settlement Order Is Procedurally Improper .................... 14

        2.    Dana Is Not Required to Disclose Commercially Sensitive Information ......................................................................................... 14

        3.    Protection of "Commercial Information" Is Not Limited to Competitors ....................................................................................... 17

        4.    Settlement Agreements Are Not Excluded from the Protections of Section 107(b) of the Bankruptcy Code .................................................. 22

    C.    The Ad Hoc Committee's Argument that the Settlement Agreements Violate Section 1123(a)(4) of the Bankruptcy Code Is Not Ripe for Consideration; Even If It Were Ripe for Consideration, It Is Wrong................. 22

    D.    The Ad Hoc Committee's Argument that the Settlement Agreements Violate Section 524(g) of the Bankruptcy Code Is Not Ripe for Consideration; Even If It Were Ripe for Consideration, the Debtors Are Not Obliged to Comply With the Requirements of Section 524(g) of the Bankruptcy Code ......................................................................................... 26

    E.    The Settlement Agreements Do Not Violate Ethics Rules .................................. 28

# TABLE OF AUTHORITIES

## CASES

**Page No.**

The Ad Hoc Comm. of Asbestos Personal Injury Claimants v. Dana Corp. (In re Dana Corp), Case No. 1:08-CV-01037-PAC ...............................................................................23

In re Alterra Healthcare Corp., 353 B.R. 66 (Bankr. D. Del. 2006) .......................................18, 19

Am. Savings Bank, FSB v. UBS Fin. Servs., Inc., 347 F.3d 436 (2d Cir. 2003) ........................24

Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Serv., Inc.), 762 F.2d 185 (2d Cir. 1985) ...................................................................................................................................11

The Appealing EETC Objectors v. UAL Corp. (In re UAL Corp.), No. 03 CV 2414, 2003 WL 23801402 (N.D. Ill June 13, 2003)...............................................................18, 19, 22

BA Leasing Parties v. UAL Corp., Nos. 03 C 2232 and 03 C 2414, 2003 WL 22176068 (N.D. Ill. Sept. 15, 2003) ...................................................................................................18

The Bank of N.Y. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 307 B.R. 432 (Bankr. S.D.N.Y. 2004) ....................................................................................24

In re Barney's Inc., 201 B.R. 703 (Bankr. S.D.N.Y. 1996) .........................................................21

In re Brahmacom Inc., No. 04-15243-RS, 2005 WL 3240584 (Bankr. D. Mass. June 3, 2005) ...................................................................................................................................22

Certain Underwriters at Lloyd's, London v. Mercer, 801 N.Y.S.2d 231 (NY 2005) ...................28

Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.), 280 F.3d 648 (6th Cir. 2002) ............................................................................................................26

Colum. Pictures Indus., Inc. v. Persky-Bright Org., Nos. 88 Civ. 8130 (JSM) and 89 Civ. 2813 (JSM), 1993 LEXIS 16900 (S.D.N.Y. Dec. 2, 1993) ...............................................28

In re Congoleum Corp., 362 B.R. 198 (Bankr. D.N.J. 2007) ......................................................27

Cowan v. Henderson, 2003 Ohio 5546, 2003 Ohio App. LEXIS 4969 (Ohio App. 4th Oct. 15, 2003) .............................................................................................................28, 29

In re Dow Corning Corp., 255 B.R. 445 (E.D. Mich. 2000) ........................................................25

Drexel Burnham Lambert Group, Inc., 134 B.R. 493 (Bankr. S.D.N.Y. 1991) .......................1, 11

## TABLE OF AUTHORITIES
### (Continued)

**Page No.**

Geltzer v. Andersen Worldwide, S.C., No. 05 Civ. 3339, slip op., 2007 WL 273526
(S.D.N.Y. Jan. 30, 2007).................................................................................19, 20

In re Georgetown Steel Co., LLC, 306 B.R. 542 (Bankr. D.S.C. 2004) ......................................22

In re G-I Holdings, Inc., 323 B.R. 583 (Bankr. D.N.J. 2005).......................................................27

In re Hemple, 295 B.R. 200 (Bankr. D. Vt. 2003).........................................................................21

Integrated Res., Inc. v. Ameritrust Co. Nat'l Ass'n (In re Integrated Res., Inc.), 157 B.R.
66 (S.D.N.Y. 1993).................................................................................................2

Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66 (2d Cir.
1998) .........................................................................................................................6

In re Lomas Fin. Corp., No. 90 Civ. 2827 (LLS), 1991 WL 21231 (S.D.N.Y. Feb. 11,
1991) ...............................................................................................................17, 22

Motorola v. Official Comm. Of Unsecured Creditors (In re Iridium Operating LLC), 478
F.3d 452 (2d Cir. 2007)................................................................................... passim

Nixon v. Warner Commc'ns, Inc., 435 U.S. 589 (1978).................................................................15

In re Northstar Energy, Inc., 315 B.R. 425 (Bankr. E.D. Tex. 2004) ..........................................20

In re NW Investors II, LLC, No. 06 CV 5078 (ADS), 2007 U.S. Dist. LEXIS 58791
(S.D.N.Y. July 30, 2007) .......................................................................................11

Official Comm. of Unsecured Creditors of Int'l Distrib. Ctrs., Inc. v. James Talcott, Inc.
(In re Int'l Distribution Ctrs., Inc.), 103 B.R. 420 (S.D.N.Y. 1989) ..................................11

Osborne v. Am. Express Travel Related Servcs. Co. (In re Global Vending), Bankr. No.
04-23562, Adv. No. 05-2417, 2006 WL 1679732 (Bankr. S.D. Fla. May 16,
2006) ......................................................................................................................20

In re Quigley Co., 377 B.R. 110 (Bankr. S.D.N.Y. 2007)............................................................25

Shrader v. CSX Trans., Inc., 70 F.3d 255 (2d Cir. 1995) ............................................................14

Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984
(2d Cir. 1990)...........................................................................................................1

Simmonds v. Immigration and Naturalization Serv., 326 F.3d 351 (2d Cir. 2003) ....................24

**TABLE OF AUTHORITIES**
**(Continued)**

<u>**Page No.**</u>

<u>In re Telcar Group, Inc.</u>, 363 B.R. 345 (Bankr. E.D.N.Y. 2007)..................................................11

<u>United States v. Mitchell</u>, 966 F.2d 92 (2d Cir. 1992).....................................................................1

<u>U.S. Trustee v. Andover Togs, Inc. (In re Andover Togs, Inc)</u>., Nos. 96 Civ. 7601 (DAB)
    and 97 Civ. 6710 (DAB), 2001 WL 262605 (S.D.N.Y. Mar. 15, 2001) ........................1, 2

<u>Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)</u>,
    21 F.3d 24 (2d Cir. 1994) ....................................................................................15, 18, 22

<u>In re Worldcom, Inc.</u>, 347 B.R. 123 (Bankr. S.D.N.Y. 2006) .................................................10, 11

# TABLE OF AUTHORITIES
## (Continued)

**Page No.**

## FEDERAL STATUTES

11 U.S.C.§ 107(b) ............................................................................15, 17, 22

11 U.S.C. § 363 ....................................................................................1, 4

11 U.S.C.§ 524(g) ........................................................................2, 3, 26, 27

11 U.S.C. § 1110(b) ...............................................................................17, 18

11 U.S.C. § 1123(a)(4)............................................................................ passim

11 U.S.C. § 1124(1)...................................................................................24

28 U.S.C. § 158(a)(1)....................................................................................1

## BANKRUPTCY RULES

Federal Rule of Bankruptcy Procedure 9018...............................................14

Federal Rule of Bankruptcy Procedure 9019....................................... passim

## SECONDARY SOURCES

Collier on Bankruptcy ¶ 107.01, at 107-2 (15th ed. 1993) ...........................15

Appellee Dana Corporation ("Dana" or "Appellee"), one of the above-captioned reorganized debtors (collectively with Dana, the "Debtors"), respectfully files this opening brief in opposition to the appeal by the Ad Hoc Committee of Asbestos Personal Injury Claimants (the "Ad Hoc Committee" or "Appellant") of the Order, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), Approving Certain Settlement Agreements Between Dana Corporation and Certain Asbestos-Related Personal Injury Plaintiffs (the "Settlement Order"), issued on November 15, 2007, by Judge Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(l).

## STANDARD OF REVIEW

On appeal, the Bankruptcy Court's findings of fact must be accepted unless clearly erroneous; its conclusions of law are reviewed de novo.  Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 988-89 (2d Cir. 1990).  A finding of fact is clearly erroneous only when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992) (citations omitted).

This Court reviews matters falling within the discretion of the Bankruptcy Court, such as the approval of a settlement agreement, under the "abuse of discretion" standard.  Motorola v. Official Comm. Of Unsecured Creditors (In re Iridium Operating, LLC), 478 F.3d 452, 461 n.13 (2d Cir. 2007) ("Iridium") (citing In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 292 (2d Cir. 1992).  An abuse of discretion may be found "only . . . where (1) the decision was based on an erroneous conclusion of law; (2) the record contains no evidence on which the judge could have based his decision; or (3) supposed facts found are erroneous as found."  U.S. Trustee v.

Andover Togs, Inc. (In re Andover Togs, Inc)., Nos. 96 Civ. 7601 (DAB) and 97 Civ. 6710

(DAB), 2001 WL 262605, at *2 (S.D.N.Y. Mar. 15, 2001) (quoting Integrated Res., Inc. v.

Ameritrust Co. Nat'l Ass'n (In re Integrated Res., Inc.), 157 B.R. 66, 72 (S.D.N.Y. 1993)).

## STATEMENT OF THE CASE

### Preliminary Statement

This appeal arises from the Bankruptcy Court's November 15, 2007 Settlement Order,

which approved four settlement agreements (collectively, the "Settlement Agreements") between

Dana and approximately 7,500 asbestos-related personal injury claimants (collectively,

the "Asbestos Personal Injury Claimants") represented by four firms – Robert Peirce &

Associates ("Peirce"); The Lanier Law Firm ("Lanier"); Goldenberg, Miller, Heller & Antognoli

("Goldenberg Miller"); and Bevan & Associates ("Bevan" and collectively with Peirce, Lanier

and Goldenberg Miller, the "Tort Attorneys").

In its opening brief, the Ad Hoc Committee marches through a laundry list of alleged

errors and shortcomings associated with the Settlement Order.  Among other things, the Ad Hoc

Committee argues that:  (a) parties in interest could not evaluate whether the Settlement

Agreements were fair and equitable because the Bankruptcy Court permitted Dana to file the

Settlement Agreements under seal; (b) the Bankruptcy Court failed to articulate its analysis of

each of the potentially relevant factors set forth in Iridium; (c) the Settlement Agreements violate

section 1123(a)(4) of the Bankruptcy Code (the "Bankruptcy Code") because the Asbestos

Personal Injury Claimants allegedly received more favorable treatment than other similarly

situated claimants under the Debtors' now-confirmed plan of reorganization; (d) the Settlement

Agreements allegedly resolve future asbestos claims without recourse to section 524(g) of the

Bankruptcy Code; and (e) the tolling provisions of the Settlement Agreements potentially restrict a lawyer's right to practice law in violation of certain unidentified ethics rules.[1]

This Court should affirm the Settlement Order for a variety of reasons that are addressed more fully below:

- The Ad Hoc Committee has not met its burden to show that the Bankruptcy Court abused its discretion in finding the Settlement Agreements to be fair and equitable and in the best interests of Dana's estate in light of the uncontroverted evidence presented at the hearing on entry of the settlements.

- The Ad Hoc Committee's attempt to obtain confidential information contained in the Settlement Agreements is procedurally improper and, in any event, is not supported by controlling case authority.

- The Settlement Agreements do not violate section 1123(a)(4) of the Bankruptcy Code because the Plan provides for identical treatment of all asbestos personal injury claims.  This issue should be resolved through a separate appeal of another order currently being pursued by the Ad Hoc Committee in this Court before Judge Crotty.

- Dana is not required to comply with section 524(g) of the Bankruptcy Code to effect these settlements.  This issue also should be resolved through a separate appeal of another order currently being pursued by the Ad Hoc Committee in this Court before Judge Crotty.

- The Settlement Agreements (and their unremarkable tolling provisions) do not violate any ethics rules.

## Procedural History

On March 3, 2006 (the "Petition Date"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code.

On October 23, 2007, the Debtors filed their Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (Docket No. 6671) (as amended, modified or supplemented, the "Plan") and the related Disclosure Statement (Docket No. 6669)

---

[1]     The Ad Hoc Committee's apparent aim is to unearth commercially sensitive information contained in the sealed Settlement Agreements for strategic advantage in its members' current and/or future settlement negotiations with Dana.

(the "Disclosure Statement").  Also on October 23, 2007, the Bankruptcy Court entered an order

(Docket No. 6673) approving the Disclosure Statement.

On October 25, 2007, Dana filed the Motion of Debtor Dana Corporation for an Order

Authorizing It to File Settlement Agreements with Certain Asbestos Personal-Injury Plaintiffs

Under Seal (Docket No. 6693) (the "Sealing Motion").  On October 26, 2007, the Bankruptcy

Court entered the Order Authorizing Debtor Dana Corporation to File Settlement Agreements

with Certain Asbestos-Related Personal Injury Plaintiffs Under Seal (Docket No. 6709)

(the "Sealing Order").  No party, including the Ad Hoc Committee, has challenged the entry of,

sought reconsideration of, or taken an appeal from, the Sealing Order.

On October 26, 2007, Dana filed the Motion of Debtor Dana Corporation for an Order,

Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), Approving

Certain Settlement Agreements Between Dana Corporation and Certain Asbestos-Related

Personal Injury Plaintiffs (Docket No. 6724) (the "Settlement Motion").  On November 8, 2007,

the Ad Hoc Committee filed The Ad Hoc Committee of Asbestos Personal Injury Claimants'

Objection to Motion of Debtor Dana Corporation for an Order, Pursuant to Section 363 of the

Bankruptcy Code and Bankruptcy Rule 9019(a), Approving Certain Settlement Agreements

Between Dana Corporation and Certain Asbestos-Related Personal Injury Plaintiffs and Motion

to Continue the Hearing on the Settlement Agreements Until the Ad Hoc Committee Has the

Opportunity to Review Those Agreements (Docket No. 6849) (the "Objection").  On

November 14, 2007, Dana filed its Reply in Support of Motion of Debtor Dana Corporation for

an Order, Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a),

Approving Certain Settlement Agreements Between Dana Corporation and Certain Asbestos-

Related Personal Injury Plaintiffs (Docket No. 6916) (the "Reply Brief").

On November 15, 2007, the Bankruptcy Court conducted an evidentiary hearing (the "Evidentiary Hearing") on, among other matters, the Settlement Motion and the Objection. See November 15, 2007 Hearing Transcript (the "Transcript").  At the Evidentiary Hearing, Dana proffered the testimony – without objection from the Ad Hoc Committee – of Michael DeBacker, the project manager responsible for managing Dana's asbestos litigation, evaluating the asbestos claims asserted against Dana, directing the litigation strategy for those claims and overseeing the settlement of those claims, including the 7,500 Asbestos Personal Injury Claims subject to the Settlement Agreements.  Transcript at p.15:8-20.  Counsel for the Ad Hoc Committee had the opportunity to, and did, cross-examine Mr. DeBacker.  Transcript at 18:5 – 22:8.

In addition, at the Evidentiary Hearing, counsel for (a) the Unsecured Creditors' Committee, the fiduciary for all unsecured creditors, including the claimants represented by the Ad Hoc Committee (the "Unsecured Creditors' Committee"), and (b) the Ad Hoc Committee of Bondholders, representing $1.4 billion in claims (the "Ad Hoc Bondholders' Committee"), both stated that they fully supported the Settlement Agreements and believed them to be a "good deal for the estates."  Transcript at 28:13 – 24 (Statements of Mr. Hansen and Mr. Zide).  On November 15, 2007, the Bankruptcy Court overruled the Objection and entered the Settlement Order granting the Settlement Motion.  (Docket No. 6929.)

On November 23, 2007, the Ad Hoc Committee filed its Notice of Appeal of the Settlement Order (Docket No. 7059) (the "Original Notice of Appeal").  On November 26, 2007,

the Ad Hoc Committee filed its Amended Notice of Appeal (Docket No. 7061) (the "Amended

Notice of Appeal").[2]

On December 26, 2007, the Bankruptcy Court issued its Order Confirming Third

Amended Joint Plan of Reorganization of Debtors and Debtors-in-Possession (Docket No. 7509)

(the "Confirmation Order").[3]  On January 31, 2008, pursuant to the Plan and Confirmation Order,

Dana emerged from chapter 11 as a reorganized Debtor.  See Notice of Effective Date of Third

Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (Docket No. 7714)

(the "Notice of Effective Date").

**Statement of Facts**

Prior to the Petition Date, Dana had been named as a defendant in a large number of

lawsuits related to (a) Dana's sale of certain automotive gaskets containing asbestos in an

encapsulated form and (b) the alleged exposure of people to asbestos as a consequence of contact

with these gaskets.  Transcript at 13:1 – 13.  According to available data, as of June 30, 2007,

there were approximately 133,000 pending asbestos-related personal injury claims against Dana

(collectively, the "Asbestos Personal Injury Claims"), well over half of which were assigned to

inactive dockets because the asbestos personal injury claimants had not manifested any sign of

asbestos-related illness.  See Transcript at 12:16 – 25 (noting that the number of cases is 133,000

as a result of Dana's dismissal from 17,000 cases in Mississippi).

The vast majority of asbestos cases filed against Dana have not involved any of Dana's

products and, hence, ultimately have been dismissed.  Transcript at 13:1 – 18.  In addition, Dana

---

[2]       The Ad Hoc Committee filed the Amended Notice of Appeal for the purpose of adding a party that it
omitted from the Original Notice of Appeal.

[3]       This Court may take judicial notice of the Confirmation Order and the Notice of Effective Date (defined
below).  Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)
(citations omitted) ("A court may take judicial notice of a document filed in another court not for the truth of the
matters asserted in the other litigation, but rather to establish the act of such litigation and related filings").

has significantly better defenses available to it compared to companies that have incurred large asbestos liabilities.  Transcript at 13:6 – 13.  Collectively, Dana's defenses have limited the number of valid claims against Dana and the amounts required to settle those cases.  Transcript at 13:14 – 24.

As a general matter, because of Dana's substantial and successful defenses to Asbestos Personal Injury Claims, and available insurance, the Plan reinstates Asbestos Personal Injury Claims and passes them though the chapter 11 cases unimpaired, meaning that the holders of Asbestos Personal Injury Claims may continue to sue Dana in the tort system and either litigate or settle their cases against Dana in the ordinary course, at their own discretion.  <u>See</u> Transcript at 17:10 – 13; Plan at § II.B.6.  Pursuant to the terms of the Plan, Dana will continue to defend, settle and/or resolve Asbestos Personal Injury Claims in the ordinary course of its business and consistent with past practices and the terms of the Plan.  <u>See</u> Transcript at 16:18 –22; Plan at § II.B.6.

Although the Asbestos Personal Injury Claims asserted against Dana were neither a significant factor in Dana's decision to file its chapter 11 case nor a driving force in its chapter 11 proceedings, after the Petition Date Dana nevertheless continued to consider potential settlements and structures to best address these claims without the necessity of incurring further defense costs.  Transcript at 13:19 – 14:14.  Among other things, Dana continued to entertain and negotiate potential settlements with several counsel for holders of Asbestos Personal Injury Claims, including members of the Ad Hoc Committee.  Transcript at 13:19 – 14:14.  As a result of these negotiations, by November 2007, Dana had reached agreements with the four Tort Attorneys, who collectively represented approximately 7,500 claimants.  Transcript at 14:12 – 14; 15:20 – 22.  Dana determined that it was reasonable and in the best interests of its estate to enter into the Settlement Agreements.  Transcript at 17:19 – 18:1.

By the Settlement Agreements, and as fully disclosed in the Settlement Motion and at the Evidentiary Hearing, Dana:  (a) resolved more than 7,500 Asbestos Personal Injury Claims, all of which had been filed as lawsuits through March 2, 2006, the date prior to the Petition Date; and (b) provided an administrative mechanism for discussing future cases that may be brought by the Tort Attorneys.  Transcript at 12:12 – 14; 15:20 – 17:9.  Of the 7,500 claims, the Settlement Agreements resolved approximately 7% of the mesothelioma and 4% of the cancer cases filed against Dana.  Transcript at 15:25 – 16:5.  Dana estimates that the total payments on account of these settlements, if all claimants are able to submit the required proof to support their claims, would be approximately $2,000,000.  Transcript at 16:5 – 9.  Dana concluded that the amounts to be paid to the Asbestos Personal Injury Claimants under the Settlement Agreements were reasonable and wholly consistent with, or better than, other asbestos settlements reached by Dana prior to the Petition Date for similar claims of individuals represented by the Tort Attorneys and other attorneys.  Transcript at 17:19 – 18:1.

With respect to those Asbestos Personal Injury Claimants who choose not to accept the settlements contained in the Settlement Agreements, the Tort Attorneys agreed not to schedule cases for trial against Dana, and agreed not to oppose any motions filed on Dana's behalf to continue a trial date, for a period of two years.  Transcript at 16:23 – 17:9.  In addition, the Settlement Agreements require that the Tort Attorneys submit all potential new cases and claims to Dana for potential resolution on an informal, administrative basis, and provide basic information regarding these potential new cases and claims, before naming and serving Dana as a defendant, which process is designed to reduce Dana's costs of litigating future cases. Transcript at 16:13 – 17:9.  With respect to these future cases, the Settlement Agreements contain tolling provisions by which the Tort Attorneys agree to forbear from filing lawsuits with

respect to claims that arise after the date of the Settlement Agreements, for two years, and Dana similarly agrees to toll the statute of limitations. Transcript at 17:1 – 9.

Moreover, the Settlement Agreements each contain a provision requiring that they be kept confidential. Sealing Motion at ¶ 9; Reply Brief at 3. Dana determined that if the Settlement Agreements' financial terms were made public, they could dictate the terms of future negotiations and constitute a ceiling or floor, as the case may be, for future settlements with other plaintiffs' firms, such as those comprising the Ad Hoc Committee. Transcript at 26:24 – 27:13. For those reasons, Dana sought and obtained an order authorizing it to file the Settlement Agreements under seal to avoid prejudicing itself in any future negotiations with other asbestos-related personal injury claimants – including members of the Ad Hoc Committee. Transcript at 30:1 – 17. The Ad Hoc Committee never challenged the Sealing Order, never sought to have the Sealing Order reconsidered and did not appeal the Sealing Order.

The Settlement Motion disclosed with specificity the material terms of the Settlement Agreements, including the total number of settled claims (approximately 7,500) and the aggregate amount of the expected settlement payments if all claimants submit the required proof to support their claims (approximately $2,000,000). Transcript at 12:13 –14; 15:17 – 16:9. On the record at the Evidentiary Hearing, Dana's counsel noted that performing simple math on these numbers results in an average settlement of approximately $267 per claim. Transcript at 25:16. These disclosures were made to all parties in interest, and the full, unredacted Settlement Agreements themselves were provided to professionals for the Unsecured Creditors' Committee, the fiduciary for all unsecured creditors, and to the Bankruptcy Court itself, the ultimate arbiter of whether to approve the Settlement Agreements. Transcript at 14:18 – 25; 27:14 –19. Accordingly, all parties in interest had sufficient information to evaluate the reasonableness of the Settlement Agreements. Transcript at 30:1 – 6. Based upon the pleadings and the record,

including the uncontroverted testimony of Mr. DeBacker, the Bankruptcy Court entered the

Settlement Order.  Transcript at 28:25 – 30:19; Settlement Order at 2.

**ARGUMENT**

The Ad Hoc Committee raises five broad "points" on appeal.  Accordingly, Dana

addresses each of Appellant's "points" below.  For the reasons set forth below, the appeal should

be denied.

A.    **The Ad Hoc Committee Cannot Demonstrate**
      **an Abuse of the Bankruptcy Court's Discretion**
      **in Approving the Settlement Agreements**

In granting the Settlement Motion, the Bankruptcy Court found that the Settlement

Agreements were (a) fair and equitable and (b) in the best interests of the estate under Federal

Rule of Bankruptcy Procedure 9019 and the Second Circuit's decision in Iridium.  See Settlement

Order at 2.  Nevertheless, the Ad Hoc Committee complains that there is no indication of which

Iridium factors, if any, the Bankruptcy Court considered in approving the Settlement

Agreements.  See App. Br. at 36.[4]

This argument ignores the fact that Dana explicitly argued that each of the Iridium factors

had been satisfied.  See Settlement Motion at 9; Reply Brief at 5-6.  In fact, Dana noted –

---

[4]    In Iridium, the Second Circuit set forth the following factors a court may consider in determining whether a
proposed compromise and settlement is fair and equitable:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
> (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience,
> and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the
> creditors, including each affected class's relative benefits and the degree to which creditors either
> do not object to or affirmatively support the proposed settlement; (4) whether other parties in
> interest support the settlement; (5) the competency and experience of counsel supporting, and the
> experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature
> and breadth of releases to be obtained by officers and directors; and (7) the extent to which the
> settlement is the product of arm's length bargaining.

478 F.3d at 462 (citing In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

without protest from the Ad Hoc Committee – that the Ad Hoc Committee had not challenged

Dana's satisfaction of all the <u>Iridium</u> factors.[5]  Reply Brief at 5.

More importantly, however, nothing in the record suggests that the Bankruptcy Court did

<u>not</u> consider the <u>Iridium</u> factors.  The Ad Hoc Committee implies that the Bankruptcy Court was

required to issue a written opinion addressing each and every one of the seven <u>Iridium</u> factors.

<u>See</u> App. Br. at 36.  There is no such requirement, and the Bankruptcy Court's decision not to

address each factor in its opinion is not evidence that the factor was not considered.

Accordingly, this argument must fail.

In fact, to approve a Settlement Agreement, a bankruptcy court need only "canvas" the

issues to determine whether the settlement falls below the lowest point of reasonableness.

<u>Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Serv., Inc.)</u>, 762 F.2d 185, 189 (2d Cir.

1985).  Moreover, a bankruptcy court need not conduct a "mini trial" on the issues to be settled.

<u>In re Telcar Group, Inc.</u>, 363 B.R. 345, 352 (Bankr. E.D.N.Y. 2007); <u>In re Worldcom</u>, 347 B.R.

123, 137 (Bankr. S.D.N.Y. 2006).  Instead, a bankruptcy court may give weight to the opinions

of the parties and their attorneys and may consider the principals' belief that the relevant factors

have been considered and that the settlement is fair and reasonable.  <u>Official Comm. of</u>

<u>Unsecured Creditors of Int't Distribution Ctrs., Inc. v. James Talcott, Inc. (In re Int'l Distrib.</u>

<u>Ctrs., Inc.)</u>, 103 B.R. 420, 422-23 (S.D.N.Y. 1989); <u>In re Drexel Burnham Lambert Group, Inc.</u>,

134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991); <u>see also</u> <u>In re NW Investors II, LLC</u>, No. 06 CV

5078 (ADS), 2007 U.S. Dist. LEXIS 58791, at *11 (S.D.N.Y. July 30, 2007) (affirming

---

[5]     On page 34 of its brief, the Ad Hoc Committee incorrectly states that "the only factor on which Dana urged approval of the Settlement Motion is the second" <u>Iridium</u> factor.  In fact, as shown herein, Dana urged approval of the Settlement Motion based on all seven <u>Iridium</u> factors.  Instead of challenging these factors, the Ad Hoc Committee apparently decided that its best strategy was to take the position that it could not evaluate the <u>Iridium</u> factors in light of the Sealing Order.

bankruptcy court's approval of settlement agreements in absence of documentary or testimonial evidence and in deference to statements of counsel and trustee).

That is precisely what occurred in the Bankruptcy Court. As noted above, Dana took the position that each of the seven Iridium factors supported approval of the Settlement Agreements. Settlement Motion at 9; Reply Brief at 5-6. Specifically, Dana argued, and Mr. DeBacker testified at the Evidentiary Hearing, that:

> (1) the Settlement Agreements provide significant benefits to Dana's estate while eliminating the risk of an adverse result if the cases were litigated; (2) the substantial expense of litigating these cases is eliminated through the Settlement Agreements; (3) the resolution of more than 5% of all claims against Dana serves the benefit of all creditors; (4) the Ad Hoc Committee has filed the only objection to the Motion, and, even then, one of its own members is a party to a Settlement Agreement; (5) counsel for both Dana and the Asbestos Personal Injury Claimants, as well as counsel for the Creditors' Committee and this Court, are highly qualified and have significant experience negotiating or reviewing, as applicable, agreements such as the Settlement Agreements; (6) no directors or officers received any releases by the Settlement Agreements; and (7) the Settlement Agreements are a product of arm's length bargaining.

Settlement Motion at 9; Reply Brief at 5-6; see also Transcript at 15:17 – 15:24; 17:19 – 18:1.

Dana's other creditors, represented by the Unsecured Creditors' Committee and the Ad Hoc Bondholders' Committee, agreed:

> MR. ZIDE:  Stephen Zide for the creditors' committee. We've reviewed these settlements and we think they are [a] very good deal for the estates and we support the debtors' motion.
>
> MR. HANSEN:  Your Honor, briefly. Kristopher Hansen on behalf of the ad hoc committee of bond holders. As you know, we represent over a billion 4 in claims in the case, which what the debtors have to produce in the claims pool now represent a significant majority of the creditors in the case. We are fully in support of this motion and we agree with the creditors' committee it is a good deal for the estate and we ask that it be approved.

Transcript at 28:14 – 24; 28:22 – 24. The Bankruptcy Court concurred, stating:

> Well, there isn't any question in the court's mind, and it has not been challenged by the objector that on the grounds of reasonableness and appropriateness for consideration of the court as to the settlement that this is indeed very beneficial to the estate. It resolves a very large number of claims, and at the same time holds the door open for other similarly situated claimants to likewise enter into these agreements, and that would include Mr. Esserman's [counsel for the Ad Hoc Committee] clients as well as his cohorts on the committee and those that are not on the committee.
>
> It is quite clear that the basic thrust of the opposition here is just a question of settlement strategy, and not only do I think, I do agree that the basic terms of the settlement have been exposed for all, that they are available for any party that wants to enter into a particular similar kind of settlement, as indeed one member of this committee has already done.
>
> The claimants will pass through and not be affected by the bankruptcy proceeding, and, as a matter of fact, if they enter into a settlement parochially it may or may not be appropriate for them to take advantage of something that would eliminate long term having to wait for payment. The funding for the settlement is clear, it's not burdensome to the estate, it is funded by insurance and in escrow that's already extant.
>
> And with respect to the request for sealing, as I've indicated, the salient terms of the settlements are already out on the table. The ability to go a little bit further is presented there for anybody who wants to take advantage of a potential settlement; and again, Mr. Esserman, I include you.
>
> I don't find there is any merit to the other parts of the objection, including the ethics rules which subsume the specter of binding lawyers to a particular course of action. They are free to take on other clients. They are free to bring proceedings. It is only an administrative quid pro quo that has been put in here in connection with the settlement; extension of time for statutes of limitation are already there. All in all I find very little merit to the objection. I'm overruling it, and repeating again it is really to flush out a settlement strategy, and as such is very dubious in value.

Transcript at 28:25 – 30:17. The Bankruptcy Court's statements on the record evidence that it

took numerous factors into account in weighing the reasonableness of the Settlement

Agreements, and it was, therefore, not an abuse of discretion for the Bankruptcy Court to

approve the settlements – particularly when the Ad Hoc Committee failed to challenge Dana's

satisfaction of the standard of Bankruptcy Rule 9019 or the <u>Iridium</u> factors or cross-examine Mr.

DeBacker on any of them.  Accordingly, based on the record and the uncontroverted evidence

that the <u>Iridium</u> factors were satisfied and that the Settlement Agreements were reasonable and in

the best interest of Dana's estate, the Settlement Order should be affirmed.

**B.    The Ad Hoc Committee Is Not Entitled to**
**Review the Underlying Settlement Agreements**

The Ad Hoc Committee has devoted the bulk of its brief to challenging the Sealing

Order.  Specifically, the Ad Hoc Committee argues that it was error for the Bankruptcy Court to

approve agreements that were not part of the public record.  App. Br. at 20.

**1.    Appellant's Challenge of the Sealing Order Under the Disguise**
**of Appealing the Settlement Order Is Procedurally Improper**

As an initial matter, to the extent the Ad Hoc Committee seeks to challenge the Sealing

Order, this appeal is procedurally improper.  Pursuant to Bankruptcy Rule 9018, any entity that

seeks to challenge a sealing order must "move to vacate or modify the [sealing] order, and after a

hearing on notice the court shall determine the motion."  In the Bankruptcy Court, the Ad Hoc

Committee never objected to, sought reconsideration of or otherwise challenged the Sealing

Order.  The Ad Hoc Committee has appealed only the Settlement Order – not the Sealing Order.

Accordingly, the Court should disregard any criticism of the Sealing Order and refuse to

consider or rule on any part of Appellant's brief that purports to challenge the Sealing Order.  <u>See</u>

<u>Shrader v. CSX Trans., Inc.</u>, 70 F.3d 255, 256 (2d Cir. 1995) (appellate courts lack jurisdiction to

review lower court orders not identified in notice of appeal).

**2.    Dana is Not Required to Disclose**
**Commercially Sensitive Information**

Even if the propriety of the Sealing Order were properly before this Court (which it is

not), a general right of public access to judicial records does not require disclosure of

confidential and commercially sensitive information to members of the Ad Hoc Committee, all

of whom have been invited to negotiate with Dana regarding the <u>exact</u> issues addressed by the

Settlement Agreements, and some of whom have actually commenced such negotiations with

Dana.  Transcript at 15:11 – 19; 27:5 – 13.

      Under prevailing Second Circuit law, the Ad Hoc Committee is not entitled to review the

Settlement Agreements in their entirety, and the Bankruptcy Court properly permitted Dana to

file the agreements under seal pursuant to section 107(b) of the Bankruptcy Code.  The Second

Circuit has noted that "courts must deny access to judicial documents – generally, where open

inspection may be used as a vehicle for improper purposes."  <u>Video Software Dealers Ass'n v.</u>

<u>Orion Pictures Corp. (In re Orion Pictures Corp.)</u>, 21 F.3d 24, 27 (2d Cir. 1994) (citing <u>Nixon v.</u>

<u>Warner Commc'ns Inc.</u>, 435 U.S. 589, 598 (1978)).  If information is of the type that merits

protection, "the court is <u>required</u> to protect a requesting interested party and has no discretion to

deny the application."  <u>Id</u>. (emphasis in original) (citing 2 <u>Collier on Bankruptcy</u> ¶ 107.01, at

107-2 (15th ed. 1993)).

      Notwithstanding this authority, the Ad Hoc Committee argues that the Sealing Order

resulted in "secret deals" and "behind the scene dealings" that are prohibited by Bankruptcy Rule

9019.  App. Br. at 22-23.  According to the Ad Hoc Committee, Bankruptcy Rule 9019 requires

"full disclosure of all of the terms" of a settlement agreement so that "those parties with a

pecuniary interest in the settlement" can be heard and object to the settlement if necessary.  App.

Br. at 22, 23.

      This argument fails because (a) the material terms of the Settlement Agreements were

fully disclosed to all parties in interest, and (b) the Ad Hoc Committee has no "pecuniary

interest" in such information.  Specifically, in the Settlement Motion, the Reply Brief and at the

Evidentiary Hearing, Dana fully disclosed, among other things, the total number of claims settled

(7,500), a breakdown of the types of claims settled by class (7% of mesothelioma, 4% of cancer, the rest unimpaired), the total number of settlement agreements (four), the identity of the law firms representing the claimants and the aggregate expected settlement amount ($2,000,000). Transcript at 12 – 18; Settlement Motion at 6 – 8; Reply Brief at 2 – 3. Moreover, Dana provided copies of the Settlement Agreements themselves to the Unsecured Creditors' Committee, as the fiduciary for all unsecured creditors – including the creditors represented by the Ad Hoc Committee – and to the Bankruptcy Court itself. The only information not disclosed were the names of the individual plaintiffs and their personal information, the individual amounts to be paid to each individual claimant and the medical and other criteria used to establish the right to payment. Thus, the Ad Hoc Committee cannot properly argue that the Settlement Agreements were "secret," that the material terms were not disclosed or that it lacked sufficient information to evaluate whether the Settlement Agreements were beneficial to Dana's estate and creditors.

The Ad Hoc Committee also has not articulated how it is a party in interest with a legitimate purpose for seeking to unseal the Settlement Agreements. Among other things, the Ad Hoc Committee fails to allege any harm to any party (including its members) from protecting the commercially sensitive information contained in the Settlement Agreements (e.g., plaintiffs' identities, social security numbers, individual settling amounts and medical and other criteria required to establish a right to payment under the agreement). Indeed, the Ad Hoc Committee has not articulated any definitive reason why such information required publication to permit evaluation of the reasonableness of the settlements under Bankruptcy Rule 9019. Rather, the Bankruptcy Court properly viewed the Objection as an ill-disguised attempt by the Ad Hoc Committee's non-settling members to gain an unfair advantage in their own settlement talks with Dana. Transcript at 30:14 – 17. The only "interests" to be served by unsealing such detailed

personal information – or sharing it with the Ad Hoc Committee – were those parochial interests of the Ad Hoc Committee's members in aiding their own settlement discussions (or determining whether they wished to enter into such discussions) with Dana.

Moreover, the Ad Hoc Committee does not have any pecuniary interest in the Settlement Agreements, nor is it a fiduciary of any party who does.  Indeed, as previously noted, the fiduciary for unsecured creditors in these cases, the Unsecured Creditors' Committee, received and reviewed the full, unredacted Settlement Agreements and supported the relief requested in the Settlement Motion.  In short, the Ad Hoc Committee occupies no special position that would entitle it to review the confidential commercial information contained in the Settlement Agreements.  Thus, the Bankruptcy Court properly sealed the Settlement Agreements.

### 3.    Protection of "Commercial Information" Is Not Limited to Competitors

The Ad Hoc Committee argues that protection of "commercial information" applies only to competitors.  App. Br. at 25.  However, to state that the term "commercial information" in section 107(b) "protects <u>only</u> information that may give a debtor's <u>competitors</u> unfair advantage" is an "interpretation [that] is too narrow."  <u>In re Lomas Fin. Corp.</u>, No. 90 Civ. 2827 (LLS), 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991) (affirming in part bankruptcy court decision to seal certain portions of creditors' committee's pleading) (emphasis added).  Here, where Dana is currently negotiating with some members of the Ad Hoc Committee and has offered to negotiate with other members, revealing confidential settlement terms to those parties would have a chilling effect on such negotiations, to the detriment of Dana's estate.  <u>See</u> <u>id</u>.

Other courts have reached the same conclusion and have refused to permit the bankruptcy process to be hijacked for such improper purposes.  For example, in the United Airlines cases, several aircraft creditors that were negotiating section 1110(b) stipulations with the debtors

objected to the debtors' filing the salient terms of other 1110(b) stipulations reached with other aircraft creditors under seal.  The bankruptcy court determined that such information – the terms and amounts under which the debtors were to pay for continued use of certain aircraft – was "a matter of competitive sensitivity; the debtor reasonably wishes to keep that information confidential."  The Appealing EETC Objectors v. UAL Corp. (In re UAL Corp.), No. 03 CV 2414, 2003 WL 23801402 (N.D. Ill June 13, 2003) (Brief of Appellee UAL Corporation at p.8) (citing transcript from hearing before bankruptcy court).  The District Court for the Northern District of Illinois dismissed the subsequent appeals as interlocutory.  BA Leasing Parties v. UAL Corp., Nos. 03 C 2232 and 03 C 2414, 2003 WL 22176068, at *5-*6 (N.D. Ill. Sept. 15, 2003).  Hence, in UAL, creditors of the debtor were not permitted to access sensitive information that would only serve to advantage such creditors in their own negotiations with the debtors.

The same is true here.  The Ad Hoc Committee merely seeks to gain an unfair and improper advantage in its members' negotiations with the Debtors and to permit certain of its members with whom the Debtors have not yet begun to negotiate to ascertain whether they should to do so.  The Ad Hoc Committee seeks information "for an improper purpose," which is prohibited in the Second Circuit under Orion.

The Ad Hoc Committee's reliance on In re Alterra Healthcare Corp., 353 B.R. 66 (Bankr. D. Del. 2006), in this regard is misplaced.  In Alterra, a newspaper sought to unseal certain asbestos settlement documents one year after they were filed under seal in the interest of its First Amendment rights and to "aid the public in evaluating the effectiveness of government regulation of assisted living facilities."  Id. at 74.  Although the bankruptcy court did not agree with that rationale, id., it did ultimately unseal the settlement agreements under a very different factual scenario.  First, unlike the Ad Hoc Committee, the members of which wish to advantage their own position in negotiations, the newspaper in Alterra had no ulterior selfish motives.  See

id. Second, the <u>Alterra</u> debtor had filed three settlement agreements publicly rather than under seal. <u>Id</u>. at 76. No such facts exist here.

Third, the <u>Alterra</u> court found no unfair advantage to market competitors. <u>Id</u>. at 76-77. Here, however, Dana noted that certain of its competitors, such as Arvin Meritor and Federal Mogul, are dealing with significant asbestos problems of their own and with many of the same firms as those on the Ad Hoc Committee. Reply Brief at 9. Much like the stipulations sealed in <u>UAL</u>, the Settlement Agreements here were properly sealed to avoid giving these competitors a leg up in their own asbestos-related settlement negotiations. Disclosure of Dana's settlement successes and strategies to Dana's competitors cannot possibly benefit Dana's estate or its competitive advantage vis-à-vis these companies.

Fourth, and perhaps most importantly, the <u>Alterra</u> court perceived no harm to the debtor in disclosing the settlements when the claims were to be satisfied from the debtor's limited insurance and a capped reserve of cash. <u>Id</u>. at 72-73, 76. The Plan here could not be more dissimilar. Under the Plan, Asbestos Personal Injury Claims were reinstated and survived Dana's bankruptcy, to continue in the tort system. There is no fixed pot for, or other limitations put upon, resolution of such claims. Dana and the claimants will continue to litigate and/or settle claims well into the future. Accordingly, having Dana's settlement strategy revealed as a matter of public record would present competitive harm and would seriously disadvantage Dana vis-à-vis the plaintiffs as the claims progress in the ordinary course. Accordingly, the determination made by the <u>Alterra</u> court under vastly different facts has no bearing in this appeal.

Similarly, the other cases cited by the Ad Hoc Committee do not support unsealing the Settlement Agreements. In <u>Geltzer v. Andersen Worldwide, S.C.</u>, the chapter 7 trustee filed a motion to approve a settlement agreement with Arthur Andersen for professional malpractice and other tort claims, but redacted the settlement amount. No. 05 Civ. 3339, slip op., 2007 WL

273526, at *2 (S.D.N.Y. Jan. 30, 2007).  Noting that the trustee's failure to identify even the settlement amount was "hardly an insignificant omission," the <u>Geltzer</u> court denied the motion on grounds that the settlement amount was critical to the Court's "independent duty to assess the fairness of the settlement."  <u>Id</u>.  Here, Dana did disclose all of the material terms – including the total amount of anticipated payouts ($2,000,000) – to all interested parties, including the Ad Hoc Committee and the Bankruptcy Court.  Armed with this knowledge, the Bankruptcy Court properly exercised its independent duty to assess the fairness of the Settlement Agreements.  Thus, <u>Geltzer</u> does not apply here.

Likewise, in <u>In re Global Vending</u>, the trustee filed a motion to file a settlement motion under seal without disclosing the underlying settlement amount.  <u>Osborne v. Am. Express Travel Related Servcs. Co. (In re Global Vending)</u>, Bankr. No. 04-23562, Adv. No. 05-2417, 2006 WL 1679732, at *1 (Bankr. S.D. Fla. May 16, 2006).  The trustee stated that the amount involved in the settlement agreement would be significant to the case and that it had no choice but to agree to confidentiality demands.  <u>Id</u>.  The Court denied the motion.  <u>Id</u>. at *3.  Here, by contrast, Dana disclosed all material terms, including the aggregate settlement amount, to all interested parties, and the Unsecured Creditors' Committee (representing interested creditors) approved.

Moreover, the Ad Hoc Committee misquotes and mischaracterizes cases that outline factors that will or will not justify a sealing order.  For example, the Ad Hoc Committee cites <u>In re Northstar Energy</u>, 315 B.R. 425, 429 (Bankr. E.D. Tex. 2004), for the proposition that "[D]isclosure of [the] information [must] reasonably be expected to cause the entity commercial injury."  This quote might suggest that a bankruptcy court cannot seal information unless the debtor is able to demonstrate that commercial injury would flow from disclosure.  But that is not at all what the <u>Northstar</u> court held.  The word "must" was simply added to the quote by the Ad Hoc Committee in an effort to bolster its argument.  By altering the quote in this manner, the Ad

Hoc Committee distorts the true meaning of the passage, which is that the potential for commercial injury is a <u>sufficient reason</u> to seal information, not a <u>necessary precondition</u>.

Likewise, the Ad Hoc Committee cites <u>In re Barney's Inc.</u>, 201 B.R. 703, 708-09 (Bankr. S.D.N.Y. 1996), for the proposition that, before issuing a sealing order, the bankruptcy court "must find" that the "information is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors."  However, <u>Barney's</u> does not suggest that benefit to competitors is the <u>only possible</u> basis for a sealing order, and the Ad Hoc Committee's insertion of its own standard by adding the words "must find" mischaracterizes the Court's holding.  In the context of the <u>Barney's</u> case, such a finding was critical to the decision; however, in other cases with different factual scenarios (such as the one at issue here), unfair benefit to competitors is just one of potentially many valid reasons that would support the issuance of a sealing order.

Finally, the Ad Hoc Committee cites a number of allegedly relevant factors from <u>In re Hemple</u>, 295 B.R. 200 (Bankr. D. Vt. 2003), and complains that the Bankruptcy Court below did not evaluate them.  App. Br. at 29.  The Bankruptcy Court did not evaluate the <u>Hemple</u> factors because, among other reasons, (a) the Ad Hoc Committee never mentioned <u>Hemple</u> in its Bankruptcy Court papers and never argued that the <u>Hemple</u> factors were relevant, (b) <u>Hemple</u> (a Vermont case) is not binding on the Bankruptcy Court, and (c) <u>Hemple</u>, by its terms, applies only to requests to seal documents for purposes of protecting third parties – not the debtor.  <u>See Hemple</u>, 295 B.R. at 202.  Here, unlike <u>Hemple</u>, the Sealing Order protects the Debtors themselves – not only third parties – against disclosure of confidential commercial information.  And, unlike the parties in <u>Hemple</u>, which provided no explanation whatsoever for the request for a sealing order, Dana fully explained to the Bankruptcy Court in the Sealing Motion why it required protection against disclosure of the confidential information contained in the Settlement

Agreements.  Accordingly, even if the Sealing Order were properly before this Court as part of this appeal (which it is not), the law and facts support the Bankruptcy Court's exercise of discretion in sealing the Settlement Agreements.

### 4.     Settlement Agreements Are Not Excluded from the Protections of Section 107(b) of the Bankruptcy Code

Finally, the Ad Hoc Committee tries to explain away unfavorable cases, including Orion, UAL and Lomas, on the basis that they do not involve settlement agreements – only "business transactions."  This is a distinction without a difference.  The test is not whether the document to be sealed is a "settlement agreement" – the test is whether the document to be sealed contains protected "commercial information."  As set forth above, the Settlement Agreements contain protected "commercial information," which the Ad Hoc Committee is not entitled to review.

In the Sealing Order, the Bankruptcy Court properly focused on the nature of the information subject to protection.  This approach is consistent with other opinions that have approved the sealing of settlement agreements under appropriate circumstances.  See, e.g., In re Brahmacom Inc., No. 04-15243-RS, 2005 WL 3240584, at *2 (Bankr. D. Mass. June 3, 2005) (settlement agreement was entitled to protection under section 107(b) when numerous disputes with similar litigants magnified risk of public disclosure of settlement agreement); In re Georgetown Steel Co., LLC, 306 B.R. 542, 547-48 (Bankr. D.S.C. 2004) (identification of specific employees and amounts to be paid to retain employees should be protected under section 107(b)).  Accordingly, Appellant's argument fails.

### C.     The Ad Hoc Committee's Argument That the Settlement Agreements Violate Section 1123(a)(4) of the Bankruptcy Code Is Not Ripe for Consideration; Even If It Were Ripe for Consideration, It Is Wrong.

The Ad Hoc Committee argued in the Bankruptcy Court and notes in its opening brief that section 1123(a)(4) of the Bankruptcy Code requires "equality of treatment," which prohibits

"payment of different percentage settlements to co-class members."  App. Br. at 37.  The Ad Hoc Committee implies that the settling Asbestos Personal Injury Claimants may have received "additional consideration" (presumably on terms more favorable than historically negotiated by similarly situated plaintiffs) and that the settling Asbestos Personal Injury Claimants are the "favored few whose settlements . . . will be paid from a special reserve in the event the Debtors' insurance is not available to pay the claims."  App. Br. at 37-38.  From this faulty premise, the Ad Hoc Committee concludes that the Settlement Agreements violate section 1123(a)(4) of the Bankruptcy Code and that the Bankruptcy Court erred in approving the agreements.

Section 1123(a)(4) of the Bankruptcy Code provides as follows:  "(a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan [of reorganization] shall – (4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  The statute, on its face, addresses only plan confirmation, not settlement of claims.  Section 1123(a)(4) has nothing to do with whether a settlement agreement that is not part of a plan of reorganization may be approved under Bankruptcy Rule 9019 and the Iridium factors.  Accordingly, this argument was premature and should have been presented as an objection to Confirmation of the Plan.

The Ad Hoc Committee raised this same argument at the Plan confirmation hearing, and the Bankruptcy Court overruled that objection.  The Ad Hoc Committee has appealed that substantive ruling, which appeal is pending in this Court before Judge Crotty.  See The Ad Hoc Comm. of Asbestos Personal Injury Claimants v. Dana Corp. (In re Dana Corp), Case No. 1:08-CV-01037-PAC (the "Confirmation Appeal").  Accordingly, because this substantive issue was actually considered and ruled upon in the correct proceeding (the confirmation hearing) and in the correct order (the Plan Confirmation Order), the Confirmation Appeal is the correct venue in

which to resolve this Plan confirmation issue. As a result, this Court should decline the

invitation to rule on a matter that was not ripe when this appeal was taken and is a matter to be

decided in another appeal. See Am. Savings Bank, FSB v. UBS Fin. Servs., Inc., 347 F.3d 436,

440 (2d Cir. 2003) (dismissing appeal as unripe because plaintiff had not exhausted all

administrative remedies, plaintiff could not demonstrate any hardship as a result of delay and

appeal would have interfered with ongoing administrative proceedings); Simmonds v.

Immigration and Naturalization Serv., 326 F.3d 351, 361 (2d Cir. 2003) (dismissing appeal as

unripe when issue could be better addressed at later date and when parties would not suffer any

hardship); The Bank of N.Y. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),

307 B.R. 432, 434-35 (Bankr. S.D.N.Y. 2004) (granting motion to dismiss for lack of subject

matter jurisdiction when underlying issues were better suited for resolution in plan confirmation

context).

    Even if the issue were ripe for consideration in this appeal (which it is not), the Ad Hoc

Committee's argument lacks merit. Under the Plan, on the Effective Date, the legal, equitable

and contractual rights of the Asbestos Personal Injury Claimants were reinstated against a

reorganized Dana in accordance with section 1124(1) of the Bankruptcy Code.[6] Accordingly, all

holders of Asbestos Personal Injury Claims against the applicable Debtors may continue to

---

[6]    Section II.B.6 of the Plan provides that "[o]n the Effective Date, the Asbestos Personal Injury Claims will
be Reinstated." See Plan at § II.B.6.

    Section I.A.164 of the Plan provides, in relevant part:

        "Reinstated" or "Reinstatement" means rendering a Claim or Interest unimpaired within the
        meaning of section 1124 of the Bankruptcy Code. Unless the Plan specifies a particular method of
        Reinstatement, when the Plan provides that a Claim or Interest will be Reinstated, such Claim or
        Interest will be Reinstated, at Dana's sole discretion, in accordance with one of the following:

        (a)    The legal, equitable and contractual rights to which such Claim or Interest entitles the
        holder will be unaltered ....

Plan at § I.A.164.

prosecute in the tort system, and settle if they so choose, precisely the same claims and cases they possessed prior to the Petition Date, and the parties retain the exact causes of action and defenses thereto.

Thus, it simply is not true that Asbestos Personal Injury Claimants will receive unequal treatment under the Plan. To the contrary, the Plan could not be any more explicit in preserving all rights of holders of Asbestos Personal Injury Claims. Within such claimants' rights, of course, is the right to settle their claims — both before and after confirmation of the Plan — for whatever consideration they choose to accept.

Indeed, the ability of debtors to settle Asbestos Personal Injury Claims without thereby violating section 1123(a)(4) of the Bankruptcy Code is manifest in the statute itself. Section 1123(a)(4) of the Bankruptcy Code requires a plan to "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4).

The Ad Hoc Committee labors to characterize the settling Asbestos Personal Injury Claimants (which have agreed to accept <u>less</u> than the full amount of their claims) as the recipients of "favored" and "preferential" treatment, thereby turning the notion of "settlement" completely on its head. <u>See</u> App. Br. at 37-38. This faulty premise should be summarily rejected. As the court observed in <u>In re Quigley Co., Inc.</u>, 377 B.R. 110 (Bankr. S.D.N.Y. 2007), "[a]greeing to settle, instead of litigating a claim, would permit a claimant to be treated differently, such as giving up more valuable consideration, in exchange for the settlement offer. <u>This treatment is allowed under § 1123(a)(4)</u>." 337 B.R. at 118 (emphasis added) (citations omitted); <u>see also</u> <u>In re Dow Corning Corp.</u>, 255 B.R. 445, 498, 505 (E.D. Mich. 2000) ("There is no requirement under Sec.[tion] 11 U.S.C.S. § 1123(a)(4) that a plan must provide strict proportional equity of payments within a class, especially if those claims are unliquidated. There

is no statutory requirement that the Bankruptcy Court weigh the strengths and weaknesses of each and every claim so that each claim receives equal value."), aff'd in relevant part and remanded in part, Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.), 280 F.3d 648 (6th Cir. 2002).

By forgoing the right to litigate their Asbestos Personal Injury Claims against the Debtors (which identical right remains with the Ad Hoc Committee members), the settling Asbestos Personal Injury Claimants have agreed to less favorable treatment under the Plan, not more, which treatment is expressly contemplated by section 1123(a)(4) of the Bankruptcy Code. Accordingly, even if this Court were to determine that this aspect of the appeal is a matter properly before this Court for determination, the appeal is without foundation and cannot serve as a basis for reversing the Bankruptcy Court's approval of the Settlement Agreements.

**D.      The Ad Hoc Committee's Argument that the Settlement Agreements Violate Section 524(g) of the Bankruptcy Code Is Not Ripe for Consideration; Even if It Were Ripe for Consideration, the Debtors Are Not Obliged to Comply With the Requirements of Section 524(g) of the Bankruptcy Code**

The Ad Hoc Committee argues that section 524(g) of the Bankruptcy Code (a) provides the "exclusive means of addressing future asbestos demands," and (b) requires a debtor to satisfy a detailed set of conditions before it will be permitted to address future asbestos demands through a future claims trust and related channeling injunctions. The Ad Hoc Committee argues that, because the Settlement Agreements do not satisfy these section 524(g) requirements, the Bankruptcy Court erred in approving them.

As an initial matter, this Court should not consider arguments related to section 524(g) of the Bankruptcy Code for the same reasons that this Court should not consider the Ad Hoc Committee's arguments related to section 1123(a)(4) of the Bankruptcy Code: they are unripe and should not be resolved in the context of an appeal regarding the Bankruptcy Court's approval

of the Settlement Agreements rather than an appeal of the Plan Confirmation Order. As with its section 1123(a)(4) arguments, the Ad Hoc Committee raised the same arguments in its objection to confirmation of the Plan. That objection was overruled, and the Ad Hoc Committee has taken the Confirmation Appeal, which is pending before Judge Crotty. Thus, this Plan-related issue should be resolved by Judge Crotty in the Confirmation Appeal.

However, even if the Court were inclined to address the merits of the Ad Hoc Committee's section 524(g) argument (which it should not), the argument is wholly without foundation. As set forth in the Settlement Motion, the Settlement Agreements provide recoveries only for claimants that had asserted claims as of the Petition Date – i.e., past claims. See Settlement Motion at ¶ 16. The only reference to future claims relates to streamlined procedures for addressing future cases that may be brought by the Tort Attorneys. Thus, Dana is not "running an end around section 524(g)," App. Br. at 42; section 524(g) of the Bankruptcy Code is not implicated by the Settlement Agreements. Indeed, as Dana noted in its pleadings and at the Evidentiary Hearing, and as the Plan makes clear, these are not cases under which the Debtors availed themselves of section 524(g) of the Bankruptcy Code.

It is well established that "simply because asbestos is involved . . . does not mean that a plan proponent's only recourse is to § 524(g)." In re Congoleum Corp., 362 B.R. 198, 202 (Bankr. D.N.J. 2007) (citing In re G-I Holdings, Inc., 323 B.R. 583, 626 (Bankr. D.N.J. 2005) (refusing to mandate the imposition of a § 524(g) trust when debtor believed it could reorganize without trust)). Accordingly, the Ad Hoc Committee's argument that Dana was obliged to comply with the requirements of section 524(g) of the Bankruptcy Code approving the Settlement Agreements fails. The Plan does not protect Dana or any other Debtor from any future asbestos demands by invoking section 524(g)'s protections or injunctions. Thus, section 524(g) does not apply.

**E.    The Settlement Agreements Do Not Violate Ethics Rules**

Finally, the Ad Hoc Committee alleges that the Bankruptcy Court erred in approving the Settlement Agreements because they "may inadvertently and impermissibly restrict a lawyer's right to practice." App. Br. at 43.  The allegedly offending terms are the tolling provisions by which the Tort Attorneys agreed to forbear from filing new lawsuits for claims that arise after the date of the Settlement Agreement for two years, and Dana agreed in exchange to toll statutes of limitations.

The Ad Hoc Committee does not cite any state-based ethics rules, any cases or any authority except an annotation to the ABA's Rules of Professional Responsibility.  The quoted annotation merely states that "[A] plaintiff's lawyer is not allowed to promise not to represent anyone else with similar claims against the defendant, and the defendant's lawyer is not allowed to ask."  App. Br. at 43-44.  It does not preclude a mutual tolling arrangement, as applied here.

The Settlement Agreements do <u>not</u> prohibit the Tort Attorneys from accepting new clients or filing additional lawsuits against Dana.  Rather, the Settlement Agreements provide an administrative procedure by which the Tort Attorneys would informally bring any new claims to Dana's attention for potential resolution short of trial and, to give that resource-preserving process a chance to work, would not seek to schedule full-blown evidentiary trials for a period of two years.  If a trial court scheduled a trial, however, all parties would participate.  There is nothing at all remarkable about these types of tolling agreements, which courts routinely recognize.  See <u>Colum. Pictures Indus., Inc. v. Persky-Bright Org.</u>, Nos. 88 Civ. 8130 (JSM) and 89 Civ. 2813 (JSM), 1993 U.S. Dist. LEXIS 16900, at *5 (S.D.N.Y. Dec. 2, 1993) (recognizing general validity of tolling agreements); <u>Certain Underwriters at Lloyd's London v. Mercer</u>, 801 N.Y.S.2d 231, 2005 NY Slip Op. 50507U, at *6, *11 (NY 2005) (same); <u>Cowan v. Henderson</u>, 2003 Ohio 5546, 2003 Ohio App. LEXIS 4969, at *P18 – *P20 (Ohio App. 4th Oct. 15, 2003)

(same).  Accordingly, the Settlement Agreements do not violate any ethics rules, and the Court

should confirm the Bankruptcy Court's approval of this aspect of the Settlement Agreements and

affirm the Settlement Order.

## CONCLUSION

WHEREFORE, Dana respectfully requests that the Court:  (a) enter an Order affirming

the Settlement Order for the reasons set forth therein, on the record below and in this Brief; and

(b) grant such other and further relief as this Court may deem proper.

Dated:    February 8, 2008                          Respectfully submitted,


                                                    /s/  Corinne Ball
                                                    Corinne Ball (CB 8203)
                                                    Steven C. Bennett (SB 2746)
                                                    JONES DAY
                                                    222 East 41st Street
                                                    New York, New York  10017
                                                    Telephone:  (212) 326-3939
                                                    Facsimile:  (212) 755-7306

                                                    Heather Lennox (HL 3046)
                                                    Robert W. Hamilton (RH 3130)
                                                    Nicholas M. Miller (NM 7516)
                                                    JONES DAY
                                                    North Point
                                                    901 Lakeside Avenue
                                                    Cleveland, Ohio 44114
                                                    Telephone: (216) 586-3939
                                                    Facsimile: (216) 579-0212

                                                    Jeffrey B. Ellman (JE 5638)
                                                    JONES DAY
                                                    1420 Peachtree Street, N.E. - Suite 800
                                                    Atlanta, Georgia  30309 3053
                                                    Telephone:  (404) 521-3939
                                                    Facsimile:  (404) 581-8330

                                                    Attorneys for Appellee
                                                    Reorganized Dana Corporation