UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>DANA CORPORATION, et al.,<br><br>                Debtors,<br><br>THE AD HOC COMMITTEE OF<br>ASBESTOS PERSONAL INJURY<br>CLAIMANTS,<br><br>                Appellant. | 1:08-cv-00020 (JGK) |

**REPLY BRIEF OF APPELLANT**
**THE AD HOC COMMITTEE OF ASBESTOS PERSONAL INJURY**
**CLAIMANTS**

Douglas T. Tabachnik (DT 6337)
**LAW OFFICES OF DOUGLAS T. TABACHNIK, P.C.**
Suite C
Woodhull House
63 West Main Street
Freehold, New Jersey 07728
Telephone: (732) 792-2760
Facsimile: (732) 792-2761

and

**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,**
A Professional Corporation
Sander L. Esserman (SE0356)*
Robert T. Brousseau (RB 4873)*
Jo E. Hartwick (JH 4109)*
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999

*Application for admission pro hac vice to be submitted.

## TABLE OF CONTENTS

**II) TABLE OF AUTHORITIES** ............................................................. 4

**III) SUMMARY OF REPLY** .................................................................. 6

**IV) ARGUMENT** .................................................................................. 8

    **A. The Record Is Devoid of Any Indication that the Bankruptcy Court Made an Informed and Independent Judgment in Approving the Settlement Agreements.** ............... 8

        1. The record does not reflect that the Bankruptcy Court applied the appropriate factors in evaluating the Settlement Agreements as necessary to make an informed and independent judgment. .................................. 8

        2. Dana's own recitation of the case law demonstrates that the Bankruptcy Court did not subject the Settlement Agreements to the requisite level of scrutiny. ..................................................................... 10

    **B. The Ad Hoc Committee Is Not Asking that the Settlement Agreements Be Unsealed.** ................................ 12

        1. Dana asks this Court to ignore Rule 9019 of the Federal Rules of Bankruptcy Procedure and the cases interpreting it. .......................................................... 13

        2. Dana cites only one inapposite case in which a bankruptcy court has approved sealing a settlement agreement where, after notice and hearing, no creditor objected to the decision to keep the settlement off the public record. ..................................................... 14

    **C. The Bankruptcy Court's Error in Approving Settlement Agreements which Deny Equality of Treatment to Members of the Same Class is Ripe for Consideration on Appeal.** ............................................. 15

    1. The standard for determining finality for purpose of appeal in bankruptcy.........................................15

    2. Dana cites authority that is simply inapplicable to this appeal............................................................17

**D. Dana Cannot Enter into a Settlement Agreement Providing for Treatment of Future Asbestos Claims Without Complying with the Requirements of 11 U.S.C. § 524(g).**.................................................................**18**

**V) C**ONCLUSION..............................................................................**20**

# II.
# TABLE OF AUTHORITIES

Page

**A. CASES**

*Am. Savs. Bank v. UBS Fin. Servs., Inc.,*
347 F.3d 436 (2d Cir. 2003) ............................................................................. 17

*Bank of New York v. Adelphia Commc'ns Corp.*
*(In re Adelphia Commc'ns Corp.),*
307 B.R. 432 (Bankr. S.D.N.Y. 2004) .............................................................. 18

*In re Brahmacom Inc.,*
No. 04-15243-RS
2005 WL 3240584 (Bankr. D. Mass. June 3, 2005) ......................................... 14

*In re Combustion Eng'g., Inc.,*
391 F.3d 236 (3d Cir. 2005) ............................................................................. 19

*In re Georgetown Steel Co., LLC,*
306 B.R. 542 (Bankr. D.S.C. 2004) .................................................................. 14

*In re Int'l Distribution Ctrs., Inc.,*
103 B.R. 420 (S.D.N.Y. 1989) ......................................................................... 11

*In re Iridium Operating LLC,*
478 F.3d 452 (2d Cir. 2007)) ...................................................................... 6, 9, 14

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry*
*v. Anderson*
390 U.S. 414 (1968) .................................................................................... 8, 9, 10

*Simmonds v. INS,*
326 F.3d 351 (2d Cir. 2003) ............................................................................. 17

*Sonnax Indus., Inc. v. Tri Component Prods. Corp.*
*(In re Sonnax Indus., Inc.),*
907 F.2d 1280 (2d Cir. 1990) ........................................................................ 15, 16

*In re Teltronics Servs., Inc.,*
46 B.R. 426 (E.D.N.Y. 1984) ......................................................... 11

*In re Teltronics Servs., Inc.,*
762 F.2d 185 (2d Cir. 1985) .......................................................... 11

*In re The Bennett Funding Group, Inc.,*
439 F.3d 155 (2d Cir. 2006) .......................................................... 15, 16, 18

**B. STATUTORY PROVISIONS**

11 U.S.C. § 524(g) .......................................................................... 7, 18, 19, 20

11 U.S.C. § 1123(a)(4) ................................................................... 15, 17

28 U.S.C. § 2201 ............................................................................. 18

**C. RULES**

FED. R. BANKR. P. 9019 .................................................................. 7, 13, 16

**D. SECONDARY AUTHORITIES**

http://unabridged.merriam-webster.com ........................................ 10

## III.
## SUMMARY OF REPLY

The Ad Hoc Committee of Asbestos Personal Injury Claimants (the "Ad Hoc Committee")[1] respectfully submits this Reply Brief as follows:

Dana makes the remarkable suggestion that the Bankruptcy Court's order approving the Settlement Agreements cannot be overturned because the Bankruptcy Court did not affirmatively state on the record that it was boycotting the Second Circuit's *Iridium* factors. It is clear, however, that the Bankruptcy Court did ignore those factors for determining the appropriateness of bankruptcy settlements. *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007). The record in this case demonstrates that the Bankruptcy Court in fact did not apply the factors articulated by the Second Circuit as most important in evaluating whether a settlement is fair and equitable. The record shows no indication that the Bankruptcy Court made the informed and independent decision required by Supreme Court precedent and by the Second Circuit.

Even the cases cited by Dana reaffirm the inadequacy of the Bankruptcy Court's scrutiny. Dana's own case law focuses attention on the Bankruptcy Court's failure to evaluate the relevant factors necessary to reach an independent judgment that the secret Settlement Agreements were fair and equitable.

---

[1] Capitalized terms not defined herein are to be affording the meaning given to them in the Brief of Appellant The Ad Hoc Committee of Asbestos Personal Injury Claimants filed on January 22, 2008 ("Appellant's Opening Brief").

Dana's brief gives short shrift to Federal Rule of Bankruptcy Procedure 9019 which governs approval of settlement agreements in bankruptcy and instead attempts to rely on cases where bankruptcy court's approve general business transactions under other bankruptcy rules. In light of Dana's disregard of the significance of Rule 9019 and the abundant case law precluding secret settlements, it is of no small importance that Dana has been able to unearth only one case in which a bankruptcy court approved sealing a settlement agreement. Even in that case, the settlement agreement was only sealed after the parties had filed a public motion and had given creditors notice and an opportunity to be heard. Only when there was no objection by any creditor did the court allow the terms of the settlement to be kept from the public view. Moreover, in that case the settlement agreement was secured to protect the other party to the settlement agreement and not on the basis of any purported need for protection of the debtor's information.

Dana misstates the Ad Hoc Committee's position regarding Section 524(g) of the Bankruptcy Code. A debtor with asbestos liability is not obligated to use Section 524(g) as long as it does not want to achieve any of its results. It cannot, however, obtain some of the protections available pursuant to Section 524(g), *e.g.*, treatment of future asbestos claims and channeling of asbestos litigation away from a surviving entity, without complying with the specific requirements of Section 524(g). That is precisely

7

what Dana is attempting to do through approval of the Settlement Agreements.

For the foregoing reasons and those set forth in the Appellant's Opening Brief, the Bankruptcy Court committed reversible error in approving the 7,500 undisclosed Settlement Agreements.

## IV.
## ARGUMENT

A.  **THE RECORD IS DEVOID OF ANY INDICATION THAT THE BANKRUPTCY COURT MADE AN INFORMED AND INDEPENDENT JUDGMENT IN APPROVING THE SETTLEMENT AGREEMENTS.**

   1.  **The record does not reflect that the Bankruptcy Court applied the appropriate factors in evaluating the Settlement Agreements as necessary to make an informed and independent judgment.**

Dana argues that this Court cannot overturn the Bankruptcy Court on *Iridium* grounds, even though the record is devoid of any hint that the Bankruptcy Court considered the *Iridium* factors in approving the Settlements.  Brief of Debtor-Appellee Dana Corporation ("Appellee's Brief") at 10.  Dana's argument is predicated, at least in part, on the convoluted proposition that "nothing in the record suggests that the Bankruptcy Court did <u>not</u> consider the <u>Iridium</u> factors." Appellee's Brief at 11.  Dana's position is basically that there is no confession left at the scene.

The Supreme Court has made it abundantly clear that, in approving a settlement, a bankruptcy court is to make an "informed and independent judgment" that "a proposed compromise is fair and equitable." *Protective*

*Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  In *In re Iridium Operating LLC*, the Second Circuit articulated the factors that are most important in determining if a settlement meets the Supreme Court's requirement that a settlement is in fact "fair and equitable."  *In re Iridium Operating LLC*, 478 F.3d at 462

The record here is devoid of any indication of what factors, if any, the Bankruptcy Court considered in determining if the Settlement Agreements were fair and equitable.  The record is equally lacking of any indication that the Bankruptcy Court weighed **any** of the factors necessary to make an informed and independent judgment.

*Iridium* requires a nuanced analysis.  The transcript contains none.  Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 28:25, 29:1-25, and 30:1-19, Nov. 15, 2007. The Bankruptcy Court's only mention of what might be an *Iridium* factor — the balance between the litigation's possibility of success and the settlement's future benefits — is this conclusory statement:  "[T]his [the settlements] is indeed very beneficial to the estate.  It resolves a very large number of claims, and at the same time holds the door open for other similarly situated claimants to likewise enter into these agreements . . . ."  Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 29:4-5, Nov. 15, 2007.  The Order Approving Settlements is even more barren; it does not identify a single *Iridium* factor as a basis for finding

9

that the Settlement Agreements were fair and equitable.  *See generally,* Order Approving Settlements.

    2.    **Dana's own recitation of the case law demonstrates that the Bankruptcy Court did not subject the Settlement Agreements to the requisite level of scrutiny.**

Dana asserts that, to approve a settlement agreement, "a bankruptcy court need *only 'canvas' the issues* to determine whether the settlement falls below the lowest point of reasonableness." Appellee's Brief at 11.  This argument of Dana's actually proves the Ad Hoc Committee's point.  "Canvas" is defined to mean "to examine in detail" and "subject to scrutiny or investigation."  http://unabridged.merriam-webster.com.  There is no indication at all that the Bankruptcy Court did canvas the issues, making the "examination" or "scrutiny" or "investigation" that canvassing denotes.

Dana's brief rings hollow when it suggests that the Order somehow embodies the *Iridium* factors.  On its face it does not.  A review of either the transcript of the hearing or the Order makes it clear that the Bankruptcy Court never considered the factors mandated by the Second Circuit in *Iridium* as necessary to adequately perform the decision reaching process and to make an independent judgment as required by the Supreme Court in *TMT Trailer Ferry, Inc.,* 390 U.S. 414 (1968).  The only conclusion that can be drawn from the record is that the Bankruptcy Court entered an order without any mention of the *Iridium* factors after conducting a hearing where there was no evaluation of the *Iridium* factors.

Even the cases cited by Dana for what a bankruptcy court should do in evaluating a proposed settlement demonstrate that the Bankruptcy Court here missed the mark.  For example, Dana cites *In re Teltronics Services., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985), a pre-*Iridium* case, where the Second Circuit affirmed the judgment of the district court that the bankruptcy court had appropriately "canvassed" the issues.  A reading of the lower court's opinion, *In re Teltronics Services., Inc.*, 46 B.R. 426, 429 (E.D.N.Y. 1984), makes it clear that the bankruptcy court had in fact examined the proposed settlement in detail which is what "canvassing" means.

Similarly, Dana cites *In re International Distribution Centers., Inc.*, 103 B.R. 420, 421 (S.D.N.Y. 1989), another case decided years before *Iridium*, where the district court affirmed the bankruptcy court's approval of a settlement of an adversary proceeding being prosecuted by the chapter 7 trustee.  In affirming the bankruptcy court, the district court was careful to observe that the bankruptcy court had in fact examined an analysis of the proposed settlement:

> The transcript of the April 27, 1988 hearing reflects that the [bankruptcy] court reviewed the Trustee's analysis of the Claims and Eskow's Objection, Record 24-25, such as it was. Accordingly, it is quite clear that the bankruptcy court's review complied with the procedures set forth in *TMT* and its progeny, and that the required standard, that the settlement should be approved unless it falls below the lowest point of reasonableness, has in this case been properly applied.

*Id.* at 423.

In short, in all of the cases above, the reviewing court determined that based on the record in the bankruptcy court, the bankruptcy court had carefully considered all aspects of the settlement before it and had reached an informed and independent judgment that the settlement before it was fair and reasonable and in the best interests of the estate.

Dana brings up certain conclusory statements by counsel for the Creditors' Committee and counsel for the Ad Hoc Bond Holders' Committee that the settlements were a "good deal" for the Debtors' estates and that they supported the Settlement Motion. But these are counsel's views and say nothing about what the Bankruptcy Court considered in approving the settlements. Neither the testimony of Michael DeBacker, Dana's project manager of asbestos litigation nor the argument of Dana's counsel in court filings for the Settlement Hearing shed any light whatsoever on what the Bankruptcy Court considered in approving the Settlement Agreements. The record here is simply opaque. It does not show that the Bankruptcy Court correctly applied the prescribed factors to evaluate a settlement agreement or how or whether it reached an informed and independent judgment.

B.   **THE AD HOC COMMITTEE IS NOT ASKING THAT THE SETTLEMENT AGREEMENTS BE UNSEALED.**

Dana's argument that the Ad Hoc Committee is not entitled to review the Settlement Agreements misstates the Ad Hoc Committee's position regarding the sealed Settlement Agreements. Appellee's Brief at 14. The Ad Hoc Committee asserts that it was reversible error for the Bankruptcy Court

12

to approve Settlement Agreements that had not been disclosed to creditors. Appellant's Opening Brief at 10, Issues 1 and 2, and 20-33. The Ad Hoc Committee does not ask that the Settlement Agreements be unsealed, generally. The Ad Hoc Committee merely asserts that it was error for the Bankruptcy Court to approve them without allowing members of the Ad Hoc Committee to review them as contemplated by Rule 9019. In fact, the Ad Hoc Committee volunteered to enter into an appropriate confidentiality agreement.

> 1. **Dana asks this Court to ignore Rule 9019 of the Federal Rules of Bankruptcy Procedure and the cases interpreting it.**

Dana steadfastly refuses to rely on case law developed under Rule 9019 of the Federal Rules of Bankruptcy Procedure which governs approval of settlements. Dana relies instead on cases approving the sealing of information in connection with ordinary business transactions, not settlement agreements. Faced with the obvious problem that it is evading the uniform case law requiring public review of settlement agreements, Dana shockingly says that the differing caselaw developed under Rule 9019 "is a distinction without a difference." Appellee's Brief at 22. Dana's position flies in the face of Rule 9019 of the Federal Rules of Bankruptcy Procedure, a rule that expressly deals with settlements, and how that Rule has been uniformly interpreted by the courts. As the Ad Hoc Committee has previously noted, the Second Circuit itself recently stated that Rule 9019's purpose is to prevent a debtor from making agreements that are unknown to creditors and

13

is intended to provide creditors with the opportunity to evaluate a proposed settlement and to object and be heard if they find it unsatisfactory. Appellant's Brief at 22 (citing *In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007).

    2.    **Dana cites only one inapposite case in which a bankruptcy court has approved sealing a settlement agreement where, after notice and hearing, no creditor objected to the decision to keep the settlement off the public record.**

Dana contends that the Bankruptcy Court's action here is consistent with the opinions of other courts that have sealed settlement agreements. Appellee's Brief at 22. It is especially telling that Dana has found only *one case* in which the sealing of a settlement agreement was approved by a bankruptcy court.[2] In *In re Brahmacom Inc.*, No. 04-15243-RS, 2005 WL 3240584, at *1-2 (Bankr. D. Mass. June 3, 2005), the bankruptcy court approved sealing a settlement agreement between the debtor and its single largest creditor, Verizon. However, in *Brahmacom*, the parties to the settlement filed a joint motion to keep the agreement off the record. *Id.* at *1. All creditors and parties on the case service list were given notice and had the opportunity to object. *Id.* "No objection or other response to the Motion was filed." *Id.* In sealing the settlement stipulation, the bankruptcy court observed that it was Verizon that was eligible for protection under Section

---

[2] Dana also cites *In re Georgetown Steel Co., LLC*, 306 B.R. 542 (Bankr. D.S.C. 2004) as approving the sealing of a settlement agreement. Appellee's Brief at 22. However, *Georgetown Steel* actually involved the debtor's "Motion for an Order Authorizing the Debtor to Implement a Key Employee Retention Program" and not a settlement agreement. *Id.* at 543. The bankruptcy court ultimately granted the debtor's motion to seal the record of the hearing on the debtor's motion. *Id.* at 549.

14

107 and that it was Verizon and not the debtor that the bankruptcy court was protecting. *Id.*

Here, the case is completely different. Dana obtained an *ex parte* order. The creditors were not given notice or an opportunity to object. Here, the 7,500 other parties to the hidden Settlement Agreements did not join in Dana's motion and it is Dana that argues that it needs protection under Section 107. The case does not support Dana's position. Arguably, it defeats it.

C.  THE BANKRUPTCY COURT'S ERROR IN APPROVING SETTLEMENT AGREEMENTS WHICH DENY EQUALITY OF TREATMENT TO MEMBERS OF THE SAME CLASS IS RIPE FOR CONSIDERATION ON APPEAL.

Dana contends that the issue of the inequality of treatment of members of the same class in violation of Section 1123(a)(4) of the Bankruptcy Code caused by approval of the Settlement Agreements is not ripe for review. Appellee's Brief at 22-24. As demonstrated below, that issue was ruled upon by the Bankruptcy Court when it entered the Order Approving Settlements, a final order that is ripe for review.

1. **The standard for determining finality for purpose of appeal in bankruptcy.**

The Second Circuit has stated that the standard of finality for purposes of bankruptcy appeals is different from the standard of finality in other appeals:

> "The standards for determining finality [for purposes of appeal] in bankruptcy differ from those applicable to ordinary civil litigation. The need for different standards arises from the fact

15

> that a bankruptcy proceeding is umbrella litigation often covering numerous actions that are related only by the debtor's status as a litigant and that often involve decisions that will be unreviewable if appellate jurisdiction exists only at the conclusion of the bankruptcy proceeding. *We have thus recognized that Congress intended to allow for immediate appeal in bankruptcy cases of orders that finally dispose of discrete disputes within the larger case.*"

*In re The Bennett Funding Group, Inc.*, 439 F.3d 155, 160 (2d Cir. 2006) (quoting *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1283 (2d Cir. 1990)).

Applying this bankruptcy standard to an appeal of a bankruptcy court's approval of a settlement agreement pursuant to Rule 9019, the Second Circuit found that the order approving the settlement agreement constituted a final appealable order. *Id.* at 164. The Second Circuit also stated:

> Once the Bankruptcy Court issued the 9019 Order there was simply nothing further to be done in the Bankruptcy Court, and the case was ripe for appeal despite the pending approvals of other courts.

*Id.*

Here, the Order Approving Settlements, itself an order under Rule 9019, is a final appealable order just as the "9019 Order" was in *Bennett Funding Group*. The Bankruptcy Court ruled on the disparate treatment of members of the same class resulting from approval of the Settlement Agreements when it overruled the Ad Hoc Committee's Objection. The fact that the inequality in treatment of members of the same class caused by the Order Approving Settlements also implicates the plan of reorganization later

16

confirmed by the Bankruptcy Court does not change the fact that the Order Approving Settlements is a final appealable order.

### 2. Dana cites authority that is simply inapplicable to this appeal.

Dana's authority to support its argument that the Settlement Agreements' violation of Section 1123(a)(4) is not ripe for consideration simply does not support that conclusion. Appellee's Brief at 24.

It cites *American Savings Bank v. UBS Financial Services, Inc.*, 347 F.3d 436 (2d Cir. 2003), a case that did not involve an order entered in a bankruptcy case and, accordingly, did not apply what the Second Circuit has termed "the standards for determining finality in bankruptcy." Moreover, the reviewing court's determination that the appeal was not ripe in *American Savings Bank* turned, in large part, on the fact that the bank had not yet exhausted its administrative remedies. *Id.* at 440. Here, as in *Bennett Funding Group*, there was nothing further to be done regarding approval of the Settlement Agreements and the issue is ripe for appeal under the standards governing finality for bankruptcy purposes.

*Simmonds v. INS*, 326 F.3d 351 (2d Cir. 2003) is another case cited by Dana that not only does not involve an order entered in a bankruptcy case, it does not even involve an order entered in a *civil* case. *Simmonds* was an appeal by a state prisoner serving an indeterminate life sentence whose petition for writ of habeas corpus had been denied. *Id.* at 353. Accordingly, *Simmonds* is inapplicable here.

17

*Bank of New York v. Adelphia Communications Corp. (In re Adelphia Communications Corp).*, 307 B.R. 432 (Bankr. S.D.N.Y. 2004), the only bankruptcy case cite by Dana in purported support of its ripeness argument, is equally inapplicable. *Bank of New York* did not involve an appeal at all. Rather, the bankruptcy court in *Bank of New York* dismissed an adversary proceeding seeking a declaratory judgment. *Id.* at 433-34. The bankruptcy court considered the caselaw interpreting the requirements of the Declaratory Judgment Act, 28 U.S.C. § 2201, and found that "the requirements for establishing the required 'case or controversy," and the related requirement of ripeness have not been satisfied." *Bank of New York*, 307 B.R. at 443. *Bank of New York* has no application in this appeal.

D.  **DANA CANNOT ENTER INTO A SETTLEMENT AGREEMENT PROVIDING FOR TREATMENT OF FUTURE ASBESTOS CLAIMS WITHOUT COMPLYING WITH THE REQUIREMENTS OF 11 U.S.C. § 524(g).**

As an initial matter, for the reasons set forth above, Dana's argument that the issue regarding Section 524(g) of the Bankruptcy Codes is not ripe fails. Appellee's Brief at 26-27. It is final for purposes of bankruptcy appeals. *In re The Bennett Funding Group, Inc.*, 439 F.3d at 160.

Dana also misstates the Ad Hoc Committee's argument regarding 11 U.S.C. § 524(g). Appellee's Brief at 26-27. The Ad Hoc Committee understands and agrees that a debtor with asbestos liability has the right to reorganize without recourse to Congress' specialized provision for asbestos cases found in Section 524(g). What debtors cannot do — and what approval

18

of the Settlement Agreements allows Dana to do — is to take part of Section 524(g) without taking all of it.  Section 524(g) gives Congress' requirements for treating future claims and for channeling asbestos litigation toward a single entity.  Here, Dana's Settlement Motion makes clear that it seeks court approval of a means of treating future asbestos claims without complying with the provisions of Section 524(g).   When Congress has provided an express mechanism, a bankruptcy court is not free to fashion the same relief without following Congress' statutory requirements.

As discussed in more detail in Appellant's Opening Brief, Congress expressly crafted Section 524(g) to contain a detailed methodology for addressing future asbestos demands that includes a mechanism for assuring substantially similar treatment between present claimants and future claimants and appointment of a "futures representative" to protect the interests of future claimants.  11 U.S.C. § 524(g)(2)(B)(ii)(V).  Appellant's Opening Brief at 39-43. The Bankruptcy Court's Order makes an "end run" around the stringent prerequisites to dealing with future asbestos claims established by Congress in Section 524(g).  The Third Circuit has rejected a debtor's attempt to achieve a result in its plan of reorganization that is not in compliance with the more specific provisions of Section 524(g) though the use of other more general bankruptcy powers.  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236-37 (3d Cir. 2005).  This Court should not countenance the

Debtor's attempt to achieve Section 524(g) relief through the expediency of obtaining the approval of "settlement agreements."

## V.
## CONCLUSION

For the foregoing reasons and those set forth in Appellant's Opening Brief, the Ad Hoc Committee respectfully prays; (1) that the Order Approving Settlements be VACATED; (2) that the Settlement Motion be DENIED; and (3) for any and all other relief to which the Ad Hoc Committee may be justly entitled.

Dated: February 21, 2008

Respectfully submitted,

/s/ Douglas T. Tabachnik
Douglas T. Tabachnik (DT 6337)
LAW OFFICES OF
DOUGLAS T. TABACHNIK, P.C.
Suite C
Woodhull House
63 West Main Street
Freehold, New Jersey 07728
(732) 792-2760

and

Sander L. Esserman (SE 0356)
Robert T. Brousseau (RB 4873)
Jo E. Hartwick (JH 4109)
STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
(214) 969-4900

**ATTORNEYS FOR THE
AD HOC COMMITTEE OF ASBESTOS
PERSONAL INJURY CLAIMANTS**

20