UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

    DANA CORPORATION, et al.,

                Debtors.

—————————————————————————————

    AD HOC COMMITTEE OF PERSONAL
    INJURY ASBESTOS CLAIMANTS,

                Appellant,

    - against -

    DANA CORPORATION,

                Appellee.

—————————————————————————————

**08 Civ. 00020 (JGK)**

<u>**OPINION AND ORDER**</u>

**JOHN G. KOELTL, District Judge:**

On November 15, 2007, United States Bankruptcy Judge Burton R. Lifland issued an Order approving four settlement agreements between Dana Corporation ("Dana") and certain asbestos personal injury attorneys on behalf of 7,500 asbestos personal injury claimants. The Order followed an Evidentiary Hearing on the matter that had also taken place on November 15, 2007. The Ad Hoc Committee of Asbestos Personal Injury Claimants ("the Committee") appeals from the Order. The Committee currently consists of five personal injury claimants.

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that "[o]n an appeal [from the bankruptcy court,] the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." The Court reviews a bankruptcy court's factual findings for clear error, Fed. R. Bank. P. 8013, and its legal conclusions de novo, National Union Fire Ins. Co. v. Bonnanzio, 91 F.3d 296, 300 (2d Cir. 1996). The Court may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below. See, e.g., Borrero v. Connecticut Student Loan Found., No.3:97 Civ. 1382, 1997 WL 695515 at *1 (D.Conn. Oct. 21, 1997); In re Coronet Capital Co., No. 94 Civ. 1187, 1995 WL 429494 at *3 (S.D.N.Y. July 20, 1995).

A

The procedural history of the case is as follows. On March 3, 2006, Dana and forty of its direct and indirect subsidiaries ("the debtors") filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). The debtors filed their Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession ("the Plan") and the related Disclosure Statement on October 23, 2007. Dana

filed an unopposed Motion for an Order Authorizing It to File Settlement Agreements with Certain Asbestos Personal-Injury Plaintiffs Under Seal (the "Sealing Motion") on October 25, 2007.  The Bankruptcy Court granted Dana's motion on October 26, 2007, issuing an Order Authorizing Debtor Dana Corporation to File Settlement Agreements with Certain Asbestos-Related Personal Injury Plaintiffs Under Seal (the "Sealing Order").

Dana then moved for an Order, Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), Approving Certain Settlement Agreements Between Dana Corporation and Certain Asbestos-Related Personal Injury Plaintiffs (the "Settlement Motion").  The Committee filed an objection and moved to continue the hearing on the settlement agreements until it had the chance to review them (the "Objection").  Following Dana's reply, the bankruptcy court conducted an Evidentiary Hearing on the Settlement Motion on November 15, 2007.  At the conclusion of the Hearing, the bankruptcy court overruled the Committee's Objection and approved the settlement agreements (the "Settlement Order").  The Committee appealed the Settlement Order on November 23, 2007, and amended the appeal on November 26, 2007.  The Bankruptcy Court confirmed the Plan on December 26, 2007 (the "Confirmation Order").  On January 31, 2008, pursuant to the Plan and Confirmation Order, Dana emerged from Chapter 11 as a reorganized Debtor.

The following facts are not disputed in this appeal.
Dana has been named as a defendant in roughly 133,000 asbestos-related personal injury suits.  The suits stem from Dana's prior sale of certain automotive gaskets which, because of their encapsulated form, sealed in asbestos.  Dana entered into the four settlement agreements at issue here with attorneys representing approximately 7,500 asbestos-related personal injury claimants.  Dana proffered testimony at the Evidentiary Hearing that Dana is expected to pay approximately $2 million total to the claimants pursuant to the settlement agreements.
This would result in an average settlement of approximately $267 per claim, and would resolve approximately five percent of all pending claims against Dana.  The Plan provides that those asbestos personal injury claims that have not been resolved through the settlement agreements will pass through the bankruptcy and are reinstated against Dana.  (Evidentiary Hearing Transcript ("Tr.") at 12-16, 23, 29.)  At the Hearing, a representative of the Creditors' Committee for Dana and a representative of the Ad Hoc Committee of Bondholders both supported the settlement.  The only objection was raised by the Committee.

A bankruptcy court derives the power to approve a settlement agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure. In re Purofied Down Products Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993). The Court "reviews for abuse of discretion the reasonableness of [the bankruptcy] court's application of the rule in approving [a] [s]ettlement." In re Iridium Operating LLC, 478 F.3d 452, 461 n.13 (2d Cir. 2007). "A [lower] court's discretion is exceeded when the decision reached is not within the range of decision-making authority a reviewing court determines is acceptable for a given set of facts." Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (internal citation and quotation marks omitted.)

A

The Committee argues that the bankruptcy court erred in approving the settlement agreements because they were not filed as part of the public record of the jointly administered bankruptcy cases.

There is a presumption in bankruptcy cases for public access to papers: "a paper filed in a case under [Chapter 11] and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without

charge." 11 U.S.C. § 107(a); see also In re Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994). The Bankruptcy Code provides for two mandatory exceptions to this presumption. Upon the request of an interested party, a bankruptcy court must "protect an entity with respect to a trade secret or confidential research, development, or commercial information," and likewise must "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case" under Chapter 11. 11 U.S.C. § 107(b). "[I]f a paper falls within one of the express exceptions in § 107(b), on the request of a party in interest, the bankruptcy court shall protect a person." In re Food Management Group, LLC, 359 B.R. 543, 554 (Bankr. S.D.N.Y. 2007).

A bankruptcy court must also provide notice and a hearing before approving a settlement agreement. Fed. R. Bank. P. 9019(a). The purpose of the rule is "to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court." Iridium, 478 F.3d at 461.

The Committee argues that it did not receive sufficient notice of the contents of the settlement agreements, and that they are thus the kind of "concealed agreements" that Rule 9019 seeks to prevent. It also argues that the agreements do not fall into either of the exceptions, codified in 11 U.S.C. §

107(b), from the presumption that bankruptcy records are public, codified in § 107(a).

Dana argues that this appeal of the Settlement Order should not be used as a belated challenge to the unopposed Sealing Motion, and is therefore procedurally improper. Dana points out that a bankruptcy court has the power, with or without notice, to make any order to protect the estate or any entity in respect of any "confidential research, development, or commercial information." Fed. R. Bank. P. 9018. If the court enters such an order without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice, the court shall determine the motion. Id. In this case, the Committee never moved to vacate the Sealing Order and never appealed the Sealing Order. Dana argues in the alternative that the settlement agreements fall into the § 107(b)(1) exception for commercial information, and that enough information about the agreements was provided to the Committee to satisfy any notice requirement.[1]

The Committee seeks to establish the procedural propriety of its appeal by explaining that it does not ask that the

_____

[1] Dana does not rely in its brief on the exception from public disclosure provided by § 107(b)(2) for "scandalous or defamatory matter contained in a paper filed under [Chapter 11]," nor on the exception provided by § 107(c)(1) for "means of identification" that would "create undue risk of identity theft or other unlawful injury to the individual or the individual's property[.]" Even if it did, the redaction of the settling parties' identifying information would suffice to alleviate these concerns; sealing the entire agreements would be unnecessary.

settlement agreements be unsealed, but rather, asserts that it
was error for the Bankruptcy Court to approve them without
allowing members of the Committee to review them as contemplated
by Rule 9019.  It stresses that it volunteered to enter into a
confidentiality agreement with Dana that would have prevented
the contents of the agreements from becoming public.

It is plain that the validity of the Sealing Order is not
properly before this Court.  The Court has jurisdiction to
review only those bankruptcy court orders "designated" in the
Notice of Appeal.  Shrader v. CSX Trans., Inc., 70 F.3d 255, 256
(2d Cir. 1995).  In addition, the Court may review only those
orders preserved for appeal through objection at the lower court
stage.  See, e.g., In re Klein Sleep Products, Inc., 78 F.3d 18,
29 (2d Cir. 1996).  The Committee designated the Settlement
Order for appeal, and objected to the approval of the settlement
agreements below.  (Notice of Appeal 2; Tr. at 30.)

However, the Committee neither designated the Sealing Order
for appeal nor objected to the filing of the settlement
agreements under seal below.  (See Notice of Appeal; see Tr. at
19.)  Nor did the Committee move to vacate the Sealing Order, as
it plainly could have under Fed. R. Bank. P. 9018.  Therefore,
the propriety of the settlement agreements is before this Court,
but the propriety of the Sealing Order is not an issue on
appeal.  However, the Committee can certainly argue that there

8

was insufficient information in the public record to support the bankruptcy court's approval of the settlement agreements.

On this appeal, the Committee wrongly attempts to argue the merits of whether the settlement agreements were properly sealed under § 107(b)(1). The Committee argues that Dana's efforts to prevent attorneys for other asbestos claimants from learning how much Dana was prepared to pay for each type of disease that an individual claimant contracted is not in fact "commercial information" that can be protected from disclosure under § 107(b)(1). That position receives significant support from Judge Lynch's decision in <u>Geltzer v. Andersen Worldwide, S.C.</u>, No. 05 Civ. 3339, 2007 WL 273526, at *3-4 (S.D.N.Y. Jan. 30, 2007). In that case, the court rejected a settlement agreement where the settling parties had not even disclosed the total amount of the settlement. In the course of rejecting the settlement, the court noted that the argument that revealing the settlement amount would disadvantage a party in other settlement negotiations is a "wan excuse for impinging on the public's right of access to judicial documents." <u>Id.</u> at *4. In this case, the total amount of the settlement and the per claim average settlement for 7,500 claims was in fact publicly disclosed. In any event, however, the arguments as to whether any portion of the settlement agreements should have been sealed under § 107(b)(1) should have been presented to Judge Lifland in

the first instance so that he could decide these issues in the first instance and there would be a record of how he disposed of them.  The Committee could have made the record before Judge Lifland, and indeed the Committee can make an application to Judge Lifland to unseal the agreements.

It is also clear that it is difficult for the Committee to rely on § 107.  § 107 provides for "public access to papers." The Committee is not seeking public access.  It is seeking solely that the agreements be provided to it so that it can see the specific amounts Dana settled for with respect to individual diseases.

The issue on this appeal, which is preserved, is whether based on the public record before the bankruptcy court there is a sufficient basis for the bankruptcy court to have approved the settlement agreements.

In this case, there were sufficient facts in the public record for the bankruptcy court to approve the settlement agreements even though the full settlement agreements were filed under seal.[2]  There was substantial disclosure of the content of the agreements to the Committee.  As the bankruptcy court noted at the Evidentiary Hearing, "the basic terms of the settlement [agreements] have been exposed for all . . . they are available

---

[2] It should be noted that the complete settlement agreements were submitted to the bankruptcy court and also made available to the Creditors' Committee. (Tr. at 14, 27.)

for any party to [sic] that wants to enter into a particular similar kind of settlement. . . ." (Tr. at 29.) The number of settling tort claimants, the total value of the settlement agreements, and the average settlement amount per individual claimant have all been disclosed to the Committee – indeed, these figures were all announced at the Evidentiary Hearing. (Tr. at 16, 25.) The substantive contents of the settlements were not concealed from the Committee and there was no failure to comply with Fed. R. Bank. P. 9019.

For these reasons, the bankruptcy court did not abuse its discretion in approving the settlement agreements based on the public record before the court.


B

The Committee also argues that the bankruptcy court erred in applying the factors to be considered in approving the settlement agreements.

"It is essential that every important determination in reorganization proceedings receive the informed, independent judgment of the bankruptcy court." Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 414 (1968) (internal citation omitted). "The duty of a bankruptcy court [is] to determine that a proposed compromise forming part of a reorganization plan is fair and

equitable." Id. The Court of Appeals for the Second Circuit

has summarized the "factors for approval of settlements" under

the fair and equitable standard as follows:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;
>
> (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;
>
> (4) whether other parties in interest support the settlement;
>
> (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;
>
> (6) the nature and breadth of releases to be obtained by officers and directors; and
>
> (7) the extent to which the settlement is the product of arm's length bargaining.

Iridium, 478 F.3d at 462 (internal citations and quotations marks omitted).

The Committee argues that the bankruptcy court ignored the

Iridium factors. Its argument is based on the failure of the

bankruptcy court to enumerate the Iridium factors in its

decision.

The argument is without merit. The Motion to Approve the Settlement and the Committee's response both specifically referred to the _Iridium_ factors, and the Committee failed to make any reasonable argument that the _Iridium_ factors were not satisfied in this case. Indeed, as the experienced bankruptcy judge noted: "there isn't any question in the court's mind, and it has not been challenged by the objector that on the grounds of reasonableness and appropriateness for consideration of the court as to the settlement that this is indeed very beneficial to the estate." (Tr. at 28-29.)

The record of the November 15, 2004 Evidentiary Hearing reflects that the bankruptcy court did consider the _Iridium_ factors. After hearing both parties, the court observed that the settlement agreements were "very beneficial to the estate," thereby identifying a future benefit of the settlement as contemplated in the first _Iridium_ factor. (Tr. at 29.) It remarked that the settlement agreements "resolve[] a very large number of claims," referring indirectly to the second _Iridium_ factor. (Tr. at 29.) It heard statements from the attorneys for the Creditors' Committee and the Ad Hoc Bondholders' Committee that supported the settlement agreements, thus addressing the third and fourth _Iridium_ factors. (Tr. at 28.) The bankruptcy judge also plainly assessed the competency and experience of the counsel before him and the arms' length nature

of the bargaining.  There is no dispute as to the experience of the bankruptcy judge.  If the Committee had sought to challenge any of these factors it was free to do so at the Evidentiary Hearing, but it failed to establish that there was any deficiency with respect to any of the Iridium factors.  Indeed, at the argument of the appeal before this Court, the Committee's counsel could not explain how the settlements could be found deficient under the Iridium factors.  The Court cannot infer that the bankruptcy court ignored the Iridium factors simply because that court did not enumerate all of them.  The bankruptcy court did not abuse its discretion in its application of the Iridium factors to the settlement agreements to ensure that they were fair and equitable.

C

The Committee argues that the bankruptcy court erred in approving the settlement agreements because the agreements give differential treatment to claims in the same class, in violation of 11 U.S.C. § 1123(a)(4).

A bankruptcy plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment."  11 U.S.C. § 1123(a)(4).  However, "the same" does not mean "identical": the Court of Appeals for the Second

Circuit "has approved settlements where the class members received different percentages of recovery to take into account different factors so long as the settlement terms are rationally based on legitimate considerations." In re Hibbard Brown & Co., 217 B.R. 41, 47 (Bankr. S.D.N.Y. 1998) (citing In re Drexel Burnham Lambert Group, Inc., 130 B.R. 910, 918-19, aff'd, 960 F.2d 285 (2d Cir. 1992)); see also In re Quigley Co., Inc., 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007) ("Section 1123(a)(4) does not require precise equality, only approximate equality.").

The Committee argues that it cannot be sure of equal treatment because the terms of the settlement agreements have not been disclosed. It also argues that the settling claimants received preferential treatment because their payments are guaranteed by a special reserve, in the event that Dana's insurance is not available to pay their claims.

Dana argues that this challenge should be raised on the Committee's appeal of the Confirmation Order, pending before Judge Crotty, rather than on this appeal of the Settlement Order. It argues in the alternative that the Committee does not in fact receive unequal treatment under the Plan.

The language of 11 U.S.C. § 1123 is addressed to a bankruptcy plan: "a plan shall. . . ." 11 U.S.C. § 1123(a). It is not addressed to the steps in a reorganization that occur before a plan is confirmed, such as the Settlement Order in this

15

case.  The appropriate forum for the Committee's argument under
§ 1123(a)(4) is therefore its appeal of the Confirmation Order
before Judge Crotty, rather than its appeal of the Settlement
Order before this Court.

Even if this were the appropriate forum for the Committee's
§ 1123(a)(4) claim, the claim would fail on the merits.  The
Plan provides that the Committee's claims will pass through the
bankruptcy and be reinstated against Dana.  (Tr. at 29.)  It can
hardly be said that this treatment prejudices the Committee,
because the claimants represented by the Committee have the full
amount of their claims that they are asserting against Dana.
Those persons who settled received far less than their full
claims: "the 'same treatment' standard of section 1123(a)(4)
does not require that all claimants within a class receive the
same amount of money."  In re Joint Eastern and Southern Dist.
Asbestos Litigation, 982 F.2d 721, 749 (2d Cir. 1992).  Any
disparity in amounts would not suggest that the Committee was
the victim of unequal treatment.

Likewise, the fact that some claimants have settled while
others have not does not, by itself, indicate unequal treatment.
The key inquiry under § 1123(a)(4) is not whether all of the
claimants in a class obtain the same thing, but whether they
have the same opportunity.  "Asbestos health claimants would
receive the 'same treatment' if they all were permitted to

present their claims to a jury and were all paid whatever
amounts the jury awarded, until funds were no longer available."
Joint Eastern, 982 F.2d at 749.  That is precisely what happened
here: the Committee's claims were preserved, to be reinstated
against Dana post-bankruptcy.  The Committee claimants thus have
the opportunity to settle their claims or litigate them – the
same options given to the participants in the settlement
agreements.

It should also be noted that the very notion of "settling"
implies accepting less than one might otherwise obtain.
"Agreeing to settle, instead of litigating a claim, would permit
a claimant to be treated differently, such as giving up more
valuable consideration, in exchange for the settlement offer.
This treatment is allowed under § 1123(a)(4)."  Quigley, 377
B.R. at 118 (quoting In re Dow Corning Corp., 255 B.R. 445, 505
(E.D. Mich. 2000).  In this respect, the Committee is the
preferred party, rather than the aggrieved one.


D

The Committee argues that the bankruptcy court erred in
approving the settlement agreements because the agreements
provide for the treatment of future asbestos claims without
meeting the requirements of 11 U.S.C. § 524(g).

11 U.S.C. § 524(g) provides, in part, for a bankruptcy court that has "entere[d] an order confirming a plan of reorganization under chapter 11" to enjoin certain future claimants from taking legal action to collect on their claims, and to channel any recovery on such claims to a trust instead.[3] 11 U.S.C. § 524(g). Such a trust must "value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner." 11 U.S.C. § 524(g)(2)(B)(ii)(V). In addition, and among other requirements, seventy-five percent of the claimants whose claims will be addressed by the trust must vote in favor of the reorganization plan. 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb).

The Committee argues that the settlement agreements create a mechanism for addressing the demands of future claimants without meeting the requirements of § 524(g).

Dana argues that this challenge should be raised in the Committee's appeal from the Confirmation Order, pending before Judge Crotty. It argues in the alternative that the settlement agreements do not provide a mechanism for resolving future claims, and therefore are not subject to the requirements of § 524(g).

---

[3] The future claimants who are enjoined are those whose claims "arise out of the same or similar conduct or events that gave rise to the claims that are addressed by the injunction. . . ." 11 U.S.C. § 524(g)(2)(B)(ii)(I).

Like the Committee's § 1123(a) challenge, its § 524(g)
challenge is more properly addressed in the appeal of the
Confirmation Order.  The language of § 524(g) is addressed to "a
court that enters an order confirming a plan of reorganization."
§ 524(g)(1)(a).  The bankruptcy court had not yet entered the
Confirmation Order when the Committee appealed from the
Settlement Order.  Thus the bankruptcy court was not "a court
that enters an order confirming a plan of reorganization" at the
time of the appeal.  The § 524(g) challenge should be brought in
the proceedings before Judge Crotty, rather than before the
proceedings in this Court.

Even if this were the appropriate forum for the Committee's
§ 524(g) claim, the claim would fail on the merits.  § 524(g)
simply does not bear on the settlement agreements.  § 524(g)
contemplates an injunction against future claimants from
bringing suit to enforce their claims, and the creation of a
trust to address those claims.  Neither an injunction nor a
trust was established or even discussed by the bankruptcy court.
The settlement agreements do establish an administrative
procedure for future claims against Dana, whereby the attorneys
representing the settling claimants agree to bring such claims
informally first, with an eye toward resolving them without
litigation, and to file new lawsuits against Dana for claims
that arise after the date of the settlement agreements no sooner

than two years after that date.[4]  (Tr. at 16-17.)  To the extent
this provision compromises any future claimant's right to
litigate, it falls far short of an injunction.  Nothing more
serious than this modest limitation appears anywhere on the
record or in the settlement agreements.  Therefore, § 524(g) has
nothing to do with the bankruptcy court's approval of the
settlement agreements.

E

Finally, the Committee argues that the bankruptcy court
erred in approving the settlement agreements because they may be
interpreted to restrict a lawyer's right to practice, and thus
violate ethics rules.

The Committee fails to cite any binding ethics rule or
legal precedent to support its argument.  There was in fact no
restriction on the ability of the lawyers to represent their
clients or take on new clients.  At most, the agreements provide
for tolling agreements to allow the administrative resolution of
claims.  The bankruptcy court rejected the argument finding that
there was no violation of any ethics rules.  (Tr. at 30.)  The
Committee did not respond to the argument in its reply brief to

---

[4] In return, the statute of limitations on such claims would be tolled during
the two-year period.  (Tr. at 17.)

this Court and the argument should be deemed abandoned.  In any event, the bankruptcy court correctly rejected the argument.


CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, they are either moot or without merit.  Therefore, for the reasons stated above, the Settlement Order issued by the bankruptcy court on November 15, 2007 is **affirmed**.  The clerk is directed to close this case.


**SO ORDERED**

**Dated: New York, New York**
**September 22, 2008**

John G. Koeltl
United States District Court Judge